**CARDINAL OF ADRIAN, INC., Plaintiff-Appellant, Cross-Appellee,**

v.

**PEERLESS WOOD PRODUCTS, INC., et al., Defendants-Appellees, Cross-Appellants.**

Nos. 74–1133, 74–1134.

United States Court of Appeals, Sixth Circuit.

April 16, 1975.

C. Robert Wartell, Bellinson, Doctoroff & Wartell, Detroit, Mich., Thomas P. Mahoney, Donald M. Cislo, Mahoney, Schick & Cislo, Santa Monica, Cal., for Peerless Wood Products.

Richard D. Grauer, Cullen, Settle, Sloman & Cantor, Detroit, Mich., Daniel G. Cullen, Bernard J. Cantor, Detroit, Mich., for Cardinal of Adrian, Inc.

Before ENGEL, Circuit Judge, CECIL, Senior Circuit Judge, and WEINMAN,* Senior District Judge.

ENGEL, Circuit Judge.

This patent infringement action arises out of the manufacture and use of latchless door hinges of the type widely used on kitchen cabinets. The comprehensive opinion of District Judge Ralph M. Freeman is reported at 363 F.Supp. 1298 (E.D.Mich.1973). We repeat here only so much of the facts as are necessary to our decision.

Cardinal of Adrian is the owner by assignment of two patents, U.S. Patent No. 3,212,124 (the '124 patent) and U.S. Patent No. 3,205,532 (the '532 patent), issued to its president, Robert MacDonald. Both patents are for latchless door hinges which have the following characteristics described by the district court:

* Hon. Carl A. Weinman, Senior District Judge, United States District Court for the Southern District of Ohio, sitting by designation.

"The hinge creates a door-closing force whenever the door is within about 30 degrees of its closed position. In all open positions outside such 30 degree self-closing zone, a slight snubbing force is created which tends to hold the door at any position. Even in the fully closed position, a closing force, called 'overclosing', is continuously generated to assure full closing and to eliminate any bounce back when the door is slammed. This continuous closing force eliminates the needs for a separate latch, since the hinge itself is self-latching or self-holding as well as self-closing." 363 F.Supp. at 1300

Cardinal's suit in the district court claimed infringement of claims 2–5 of the '124 patent and of claims 1–4 of the '532 patent and originally named as sole defendant Peerless Wood Products, a manufacturer of kitchen cabinets which incorporated the accused hinge manufactured and sold by Ajax Hardware Manufacturing Corporation. Ajax subsequently voluntarily entered the lawsuit to defend its product. Since it is the Ajax hinge which is accused of infringement, the defendants will hereafter be referred to as Ajax.

Defendants denied infringement, and in addition raised the affirmative defenses of invalidity of the claims as well as certain equitable defenses. The case was tried on the merits before District Judge Ralph M. Freeman. Claim 4 of the '124 patent was deemed representative of the claims-in-suit of that patent, and claim 1 of the '532 patent was representative of the '532 claims-in-suit. The "Ajax Hinge-a-Matic" Hinge Model 591 was representative of the accused hinges.

Following a bench trial on the merits, the district court held that both patents met the basic tests of novelty, utility, and non-obviousness under 35 U.S.C. §§ 101, 102, 103, but that the '124 patent claim was invalid for "late claiming", 35 U.S.C. § 102(b). Rejecting a similar defense as to the '532 patent, the court

held its representative claim to be valid and infringed.

Both parties appeal, each from that aspect of the judgment adverse to its interests. We affirm.

### ISSUES ON APPEAL

Cardinal claims that the district court erred in holding the '124 patent claim invalid for late claiming.

Ajax claims that the district court erred in not holding the '532 patent claim invalid for late claiming. In addition, Ajax asserts:

1. That the claims of both patents are invalid because of obviousness.

2. That the '124 patent is invalid for fraud on the patent office.

3. The accused hinges did not infringe the patented claims.

4. Infringement is avoided due to file wrapper estoppel.

■ Because we affirm the holding of the district court that the '124 patent claim was invalid for late claiming, we therefore do not find it necessary to pass upon the remaining issues going to the validity of that patent. Hann v. Venetian Blind Corp., 111 F.2d 455 (9th Cir. 1940). Nor do we consider whether the claim of the '124 patent would have been infringed but for the late claiming. The infringement issue is moot, as an invalid patent cannot be infringed. Felburn v. New York Central Railroad Corp., 350 F.2d 416 (6th Cir. 1965).

■ As to the '532 patent, we have, of course, considered each defense to validity raised by the defendant as well as the infringement claim. We conclude that the District Judge properly applied tests set forth in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965), for determining obviousness under Section 103. He made all of the required factual findings, *Graham, supra;* Kolene Corp. v. Motor City Metal Treating, Inc., 440 F.2d 77 (6th Cir. 1971).[1] His factual findings are not

1. These findings are:

"(1) Under § 103, the scope and content of the prior art are to be determined;

(2) Differences between the prior art and the claims at issue are to be ascertained;

clearly erroneous, and we are in accord with his ultimate conclusion of law that the '532 patent was not obvious to one "having ordinary skill in the art". 35 U.S.C. § 103. Graham v. John Deere, *supra*. We thus do not endeavor here to add to the complete and well-reasoned analysis of this issue provided by the district court. See Cardinal of Adrian, Inc. v. Peerless Wood Products, Inc., et al., 363 F.Supp. 1298 (E.D.Mich.1973), at 1303–1306.

Late Claiming

The defense of late claiming was raised against the claims of both patents.

Before describing the particulars of each dispute, the general nature of our inquiry must first be understood. These hinge devices provide the means by which a force is supplied to bring about such advantageous characteristics as self-closing, snubbing, and over-closing. After the applications were filed in the Patent Office there was a subsequent effort by the patentee to make changes in the original disclosure. For the purposes of the late claiming defense we must decide if those changes add "new matter" to the application, or if they represent a mere change in terminology of a concept previously disclosed.

A chronology of relevant events follows:

MacDonald, the patentee, first applied for the '124 patent on June 20, 1962. In the specification to that application, the source of energy for the hinge was described as a "plunger". On April 14, 1964, this application was "finally rejected". On July 7, 1964, MacDonald filed an amendment, eliminating the word "plunger" and substituting the term "pressure member". On July 27, 1964, the amendments were disallowed, and the rejection was reiterated. Thereafter,

on October 12, 1964, a continuation application was filed with the Patent Office. The continuation application used the term "plunger" in some claims and the term "pressure member" in others. In June of 1965, new claims were added to the patent application, including what is now claim 4 of the patent, the representative claim-in-suit here. The continuation application resulted in the issuance of the '124 patent on October 14, 1965.

The application for the '532 patent was filed by MacDonald on November 5, 1962, approximately four and one-half months after the first '124 application. The specification of the '532 application described a portion of the invention as a "spring rod"; the claims described the device as a "spring rod means". While that application was still pending, on July 10, 1964, MacDonald filed an amendment to the patent application. The amendment substituted the term "spring means" for "spring rod" and "spring rod means".

Cardinal's "plunger hinge" illustrated in the '124 patent went on sale in February of 1962, but was discontinued in February of 1963. At that time, Cardinal's 1100 series hinge went on sale. This was of course after the original applications for both patents, but preceded the amendments in each by more than a year. Ajax contends that the original '124 application did not disclose the pressure member device covered by the amendment and employed in the 1100 series hinge. Similarly Ajax asserts that the amendment to the '532 patent broadened its claims by the substitution of the term "spring means" and that the 1100 series hinge employed a spring covered by the amendment but not disclosed by the first application. Thus, says Ajax both are invalid for late claiming.

(3) And the level or ordinary skill in the art [is to be] resolved."

In addition, the Supreme Court recognized that certain other considerations might be relevant:

"Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or non-obviousness these inquiries may have relevancy." See Kolene Corporation v. Motor City Metal Treating, Inc., 440 F.2d 77, 81 (6th Cir. 1971), quoting Graham v. John Deere Co., *supra*.

■ The term "late claiming" applies to a situation where it is held that Section 102(b) is violated, notwithstanding the assertion that Section 120 saves the claim from invalidity.

Title 35 U.S.C. § 102(b) provides:

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

Section 120 provides:

§ 120. Benefit of earlier filing date in the United States

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. July 19, 1952, c. 950, § 1, 66 Stat. 800.

The principle involved is that an application for a patent cannot be broadened by amendment to embrace an invention not disclosed in the application as filed, when "adverse rights of the public have intervened", Coats Loaders & Stackers, Inc. v. Henderson, 233 F.2d 915, 922 (6th Cir. 1956). This is commonly called the Muncie Gear doctrine. Muncie Gear Works v. Outboard Marine & Manufacturing Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 (1942). In that case, the Court held invalid four claims of a patent because

there had been a prior "public use, or sale, of the device which they [were] claimed to cover, more than two years before the first disclosure thereof". 315 U.S. at 768, 62 S.Ct. 865 at 869.[2]

■ As the district court recognized, a two-pronged test is necessary to determine whether a patent is invalid for late claiming. The first is to determine "whether or not the amendments made to each patent application broadened the patent so that it covered additional inventions, i. e., contained new matter". 363 F.Supp. 1309. A mere "clarification" or "refinement" of the original claim does not add new matter. Monroe Auto v. Heckethorn Mfg. & Sup. Co., 332 F.2d 406 (6th Cir. 1964). We have held that new matter is not added where "the added subject matter is something that might be fairly deduced from the original application". Acme Highway Products Corp. v. D. S. Brown Co., 431 F.2d 1074, 1080 (6th Cir. 1970). If new matter has not been added, the filing date of the original application is controlling on the question of prior public use under Section 102(b). 35 U.S.C. § 120.

The second prong of the test is whether the amendments constituted the *first* disclosure of the devices which had been on sale for more than a year—, e. g., the series 1100 hinge here. The introduction of new matter is not itself prohibited where the rights of the public have not intervened. The question is "was the invention which is now claimed disclosed in the original application, or was it not disclosed until the amendment . . ?" Dunlop Company Limited v. Kelsey Hayes Company, 364 F.Supp. 1094 (E.D. Mich.1972) affirmed 484 F.2d 407 (6th Cir. 1973) quoting Coats Loaders & Stackers, *supra.*

The '124 patent:

■ It is claimed by Cardinal that the amendment to the '124 patent did not disclose new matter, but merely clar-

**2.** Congress has since determined that the interests of the public intervene when there has been a prior public use or sale more than *one* year prior to the disclosure. 35 U.S.C. § 102(b).

ified what had already been disclosed in the original, relying on *Monroe Auto, supra.* Cardinal's argument is that the plunger, revealed in the drawings and specifications to the first application, is a type of pressure member, and therefore that the concept of pressure member was disclosed by the original. Hence, claims Cardinal, the term "pressure member" in the amendment was not new, and the pressure member used in the 1100 hinge was already disclosed by the first application. The district court rejected this reasoning, and concluded that the drawing of a plunger which was "admittedly a pressure member", was insufficient to disclose the concept of using any kind of pressure member. Thus, the court found that the amendment added new matter. The district court's finding regarding new matter is a finding of fact to which we apply the clearly erroneous test. *Acme, supra; Ajem Laboratories, Inc. v. C. M. Ladd Co.,* 424 F.2d 1124 (6th Cir. 1970). We conclude that the district court employed the proper scope of inquiry in making this determination, *Acme, supra,* and that his finding is not clearly erroneous.

Judge Freeman also concluded that the pressure member utilized in the 1100 hinge was not a "plunger", and hence was not disclosed by the original application. This finding is supported by the evidence and is not clearly erroneous. Because the 1100 hinge had been on sale since February of 1963, and the amendment describing the "pressure member" was not filed until July 7, 1964, the court correctly concluded that claim 4 of the '124 patent covered a device which had been "on sale" more than one year "prior to the first disclosure thereof". *Muncie Gear, supra,* 35 U.S.C. § 102(b). The claim was, therefore, invalid for late claiming.

The '532 patent:

Rejecting Cardinal's argument that one form of a "spring means" (the spring rod) necessarily reveals the entire concept, the district court found that the amendment to the '532 patent "broadened the patent and disclosed new mat-

ter for the first time". 363 F.Supp. at 1311. The court stated:

"The term 'spring rod' or 'spring rod means' disclosed a rod type of spring and would cover any type of rod spring, as testified to by defendants' expert, Mr. Fischer. But the term 'spring means' would cover coil springs, leaf springs and rod springs. Thus . . . the court finds that the amendment incorporated new matter into the patent."

This finding is not clearly erroneous, *Acme, supra.*

■ Applying the second prong of the test for late claiming, Judge Freeman concluded that the 1100 hinge employed a rod type of spring which was disclosed by the original application, although also covered by the claim of the amended application. This finding is supported by the record and is not clearly erroneous. *Acme, supra.* Thus, while the '532 amendment broadened the claims of the patent, it did not disclose *for the first time* a device previously on sale. It, therefore, was not filed too "late" and did not render the claims-in-suit invalid for late claiming. *Muncie Gear, supra; Coats Loaders & Stackers, supra.*

We agree with the district court's determination that claim 1 of the '532 patent is valid.

### Infringement of the '532 Patent

As noted earlier we do not discuss infringement as to the '124 patent. Our review here is limited to determining whether the district court correctly concluded that the claims-in-suit of the '532 patent were infringed by the accused hinge.

■ Infringement is a question of fact, and therefore the clearly erroneous standard applies. *Tappan Co. v. General Motors Corp.,* 380 F.2d 888 (6th Cir. 1967); *Schnadig Corp. v. Gaines Mfg. Co.,* 494 F.2d 383 (6th Cir. 1974).

■ In order to infringe a patent, "a device or machine must not only perform the same, or substantially the same func-

tion or accomplish the same result as the patented invention, but it must also perform the function or accomplish the result by identical or substantially identical means". Nickerson v. Bearfoot Sole Company, 311 F.2d 858 (6th Cir. 1963). The district court below found that the Ajax model 591 utilized the combination elements called for in the '532 claims-in-suit and performed "all of the claimed functions and in the same manner as called for by the claims". 363 F.Supp. at 1313.

Specifically, the court found:

> The evidence is clear and undisputed that, like MacDonald's '532 hinge, the accused Ajax hinge incorporates in a conventional looking, conventionally fabricated and mounted cabinet hinge the overclosing, radial snubbing in all open positions and self-closing features of the MacDonald hinge, and that these functions are accomplished by a pressure member on one leaf which acts radially against the arcuate portion of a wraparound on the other leaf and then tangentially against the edge of that wraparound. p. 1312

The Court also found that Ajax's hinge pin construction, in the form of two separate half-length pins fell within the language of the claim calling for a "hinge pin". However, neither this circumstance nor the slightly variant manner in which the carrier element was held in the Ajax hinge was sufficient to avoid infringement. Thus the Court found that the accused hinge literally infringed upon the claim of the '532 patent.

■ In Graver Mfg. Co. v. Linde Co., 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950), the Supreme Court stated:

> "In determining whether an accused device or combination infringes a valid patent, resort must first be had to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it."

When the accused device does not read exactly upon the claims of the patent, resort is had to the doctrine of equivalents. Maytag Co. v. Murray Corp. of America, 318 F.2d 79 (6th Cir. 1963). The essence of this doctrine is:

> "if two devices do the same work in substantially the same way and accomplish substantially the same result, they are the same, even though they differ in name, form or shape."

Maytag, supra, at 85, quoting Graver Mfg. Co., Inc. v. Linde Air Products Co., supra.

While finding literal infringement, the district court here went on to state:

> "Even if the patents are not literally infringed, the court would find infringement nonetheless under the doctrine of equivalents." 363 F.Supp. at 1313

■ From our examination of the documentary evidence and testimony before the trial court we conclude that whether or not the slight variances noted were sufficient to avoid literal infringement, they were, in any event, not sufficient to avoid infringement under the doctrine of equivalents. The finding of infringement on this latter basis, therefore, was not clearly erroneous. Schnadig, supra.

We find the defense of file wrapper estoppel asserted by Ajax to be completely without merit for the reasons set forth in the district court's opinion.

The judgment of the district court as to both patents is

Affirmed.