**HANES CORPORATION, Plaintiff,**

v.

**Julien MILLARD et al., Defendants.**

**Civ. A. No. 1213–73.**

United States District Court,
District of Columbia.

Oct. 21, 1976.

John F. Smith, Arlington, Va., Robert B. Frailey, Philadelphia, Pa., for plaintiff.

Walter D. Ames, Gary M. Hoffman, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

### I. *Introduction*

This is a suit to declare an expired United States patent invalid or, alternatively, to establish by declaratory judgment the scope of the patent as it affects a present controversy between Hanes and three French citizens who, as assignors of the patent, are claiming certain royalties from Hanes as assignee. The matter is before the Court on remand from the United States Court of Appeals for the District of Columbia Circuit, *Hanes Corporation v. Millard, et al.*, 174 U.S.App.D.C. 253, 531 F.2d 585 (1976). The adequacy of service of process and the jurisdiction of this Court to consider the patent issues were among other matters resolved in these prior proceedings.

There has been substantial pretrial discovery by both sides following which Hanes filed a motion for summary judgment. The issues raised by the motion have been fully briefed and argued and the Court sets forth below its reasons for granting judgment for Hanes.[1]

---

1. In view of this determination it is unnecessary to resolve a number of other pending motions relating primarily to the default of defendant Carbonnaux and the continuing failure of defendants to respond to requests for admission or to meet other dates set by Court Order on schedule. Accordingly, the following motions are to be treated as moot:

(1) Plaintiff's Motion under Rule 37, F.R.C.P., to Compel Defendants to Make Discovery, filed 6/14/76; (2) Plaintiff's Motion under Rule 55, F.R.C.P., for Judgment by Default as to Defendant Louis Carbonnaux, filed 7/20/76; (3) Defendants' Motion to Hold in Abeyance Plaintiff's Motion under Rule 55, F.R.C.P., for Judgment by Default as to Defendant Louis Carbonnaux, filed 8/3/76; (4) Defendants' Motion for Extension of Time for Filing an Opposition to Plaintiff's Motion for Summary Judgment Under Rule 56, F.R.C.P., filed 9/20/76; (5) Plain-

308

## II. *The Controversy*

In September, 1952, U. S. Letters Patent No. 2,609,677 covering a technique for knitting run-resistant fabric was issued to Lucien Picard. Picard had already assigned his interest in the patent to the three named defendants.

Picard was granted two claims, both of which are for run-resistant fabric. The patent's specifications describe in detail a method for creating the claimed fabrics by knitting a single thread on a single-feed circular knitting machine. They also describe modifications for a circular knitting machine to enable the knitting process to be successfully implemented. Forty drawings accompany the descriptions of the fabric, method, and machine. Figures # 1, # 2 and # 35 are intended to be pictorial representations of the claimed fabrics.

In November, 1952, defendants sought to interest Hanes in a license under the then newly issued Picard patent. Hanes had been seeking to produce run-proof women's hosiery and was very interested. On November 20, 1952, defendants' representative sent Hanes a copy of the patent and a swatch of knitted fabric conforming to figure # 35. Hanes then made a strenuous attempt to follow the patent specifications and to modify its machines to produce the fabric. Despite much experimentation, effort, and even after a running correspondence with defendants' representative in an effort to clear up confusion, Hanes was unable to produce the claimed fabric using the weaving techniques specified in Picard's patent. After this failure, Hanes' interest in the Picard patent lay dormant for almost ten years until 1962 when it appeared to Hanes to have some nuisance value[2] in view of the following turn of events.

In 1961, Max and Erhard Nebel, two German inventors, discovered a new process for making run-resistant fabric which, unlike Picard's single-thread approach, called for knitting two threads on multi-feed circular knitting machines. The fabric produced by this new method was identical to the fabric illustrated in figure # 35 of the Picard patent. The Nebels taught Hanes the new process, and Hanes began to produce run-resistant women's hosiery making a fabric identical to that illustrated in Picard figure # 35. In 1969, the Nebels were awarded U. S. Patent No. 3,430,463 after a multi-party patent interference where it was unsuccessfully claimed, among other things, that the Nebel invention was unpatentable over the Picard patent. Hanes acquired rights to the Nebel invention.

Under the 1962 agreement assigning the Picard patent to Hanes, Hanes was obligated to pay defendants five cents per dozen pairs of hosiery produced and sold by plaintiff if made of fabric covered by the Picard claims. Hanes apparently paid $130,000 in royalties on run-resistant hosiery, made of figure # 35 fabric, that it produced with the Nebel method. These payments were made in monthly installments from 1962 until the patent expired, which was about the time the Nebels' patent issued. Defendants later demanded additional royalties on this hosiery. This claim is subject to foreign arbitration pursuant to the patent assignment agreement.[3] Plaintiff brought this action to have the patent declared invalid or to limit its scope to the single-thread process described by Picard, determinations that would adversely affect defendants' claims should arbitration be pursued. *See Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

## III. *The Picard Patent Does Not Meet § 112 Requirements*

Plaintiff's principal contention is that the Picard patent is invalid because it does not meet the requirements of 35 U.S.C.

tiff's Motion for Judgment by Default as to All Defendants, filed 9/27/76.

2. Hanes acquired the Picard patent knowing its specifications could not be followed "to prevent someone else buying it and using it as a blocking patent against the Nebel patent appli-

cation . . . the patent had some, may we put it, nuisance value." Plf. Ex. 42, Letter from R. B. Crawford, Vice Chairman, Hanes Corp.

3. That arbitration has not yet commenced.

§ 112, which requires that before a patent may be awarded:

> The specification shall contain a *written description of the invention, and of the manner and process of making and using it,* in such full, clear, concise and exact terms as to enable any person skilled in the art . . . to make and use the same. . . . [Emphasis added.]

Where a patent fails to meet this statutory requirement it is invalid as a matter of law.

■ Hanes has demonstrated that the specifications[4] of the Picard patent do not enable one skilled in the art to produce the invention. Picard simply did not disclose the information necessary to enable such a person to produce the claimed fabrics on a single-feed circular knitting machine. In the early 1950's, Hanes had a strong incentive to produce the Picard run-resistant fabric. It is undisputed that Hanes personnel involved were experts in the knitting field and skilled in the art. Yet the affidavits of its then-directors of research show that despite all efforts no Picard-type run-resistant fabric could be produced on single-feed circular knitting machines. The difficulties encountered were basic, and not such that experts could resolve them by making variations in the patent disclosures. The Picard method simply did not work. The genuine effort of Hanes to solve the mystery of the Picard patent is well documented by contemporaneous correspondence between Hanes and defendants' representative. Both Mr. Orr and Mr. Stack, who were involved at the time, and a third expert, Mr. Fregolle, stated in unopposed affidavits that if the teachings of the patent were followed it was simply not possible to produce the run-resistant fabric claimed and illustrated by Picard. Further, in correspondence a decade later, defendant Millard, one of the assignors, admitted that certain crucial information was deliberately left out of the patent:

> The practical and *extremely important* point of the lengths of thread in each type of stitch was not explained in the Picard patent because it was wished at the beginning to make the task more difficult for eventual counterfeiters.[5] Plf. Ex. 34.

This only confirmed what Millard had previously told Hanes' counsel in a March 12, 1963, meeting. Counsel's report of this meeting (Plf. Ex. 38) said, "Millard stated that this information was left out of the Picard patent in order to keep it secret."

It should also be noted that in the multiparty patent interference where consideration was given to whether the Nebel claims were patentable over Picard, the Patent Examiner wrote:

> The difficulty here is in distilling clear and operable teachings from Picard. "Decision on Motions" Paper No. 69, March 17, 1967 (p. 406)

> The party Millard has not urged that the method disclosure of Picard will teach anyone how to produce his fabrics and rightly so. *Ibid.,* p. 412.

Upon reconsideration, the Examiner elaborated:

> The morass of misteaching in this [Picard] patent must be considered . . . Paper No. 76; August 9, 1965, p. 426. Thus, even though one skilled in the art presented with the Picard patent, and therefore required to follow one of the teachings which at times conflicts with other teachings internal to the patent, were to choose the teaching which comes closest to coinciding with the count, he would still not be taught that one way

---

4. Hanes also alleges that the claims themselves are virtually incomprehensible and that if followed will not produce the fabric represented by the accompanying drawings. Defendants do not contest the existence of errors in the claims, but contend they are not important enough to invalidate the patent. Though the evidence favors Hanes on this issue as well, it is not appropriate for treatment by summary judgment.

5. Defendants objected to the late filing of this document in support of plaintiff's motion for summary judgment. This objection is without merit since they were provided with this material weeks before during their own discovery. In addition, their own tardiness throughout these proceedings has been extraordinary and often inexplicable.

and perhaps the only way of achieving the fabric of interest is through full loop degeneration . . . . *Ibid.,* p. 431.

Defendants have presented no evidence that it was, or is, possible to produce run-resistant fabric according to the method laid out in the Picard patent.

Section 112 of 35 U.S.C. requires that the patent disclosures enable one versed in the art to make and use the claimed *invention. General Electric Co. v. Brenner,* 132 U.S. App.D.C. 323, 407 F.2d 1258 (1968). Defendants simply argue that the invention patented by Picard was the *fabric alone,* and that it did not encompass the method or machinery necessary to make the fabric. Thus defendants suggest that if after examining the claims and illustrations one versed in the art could produce the claimed fabric, although not by the method disclosed in the patent, the requirements of § 112 would be met. They urge that an issue of fact exists to defeat summary judgment because there is no evidence the fabric could not have been made by hand or by a type of knitting machine not mentioned in the patent. This ingenious effort to separate the fabric claim from the patent specifications will not withstand analysis and has no support in patent law. Picard's invention was not just the fabric as described in the claims and illustrated by figure # 35.

In determining the nature of a claimed invention it is fundamental that the claims are to be read in light of the specifications. *United States v. Adams,* 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); *Charvat v. Commissioner of Patents,* 164 U.S.App.D.C. 47, 503 F.2d 138 (1974). The invention must be ascertained from all the patent language, the history of its prosecution as detailed in the file wrapper, *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and in light of the intention of the parties. *Laitram Corp. v. Deepsouth Packing Co., Inc.,* 443 F.2d 928 (5th Cir. 1971). When the specifications, patent history, and intent of the parties are considered it becomes abundantly clear that

Picard's invention was limited to a fabric made in the specified manner.

In the specifications Picard went to great pains to indicate precisely what his invention was:

> The present *invention has for its object to produce* in the first place, an unladderable [run-resistant] knitted fabric formed by knitting a single thread . . . . Col. 1, lines 16–20.

> The *invention has furthermore for its object a machine for carrying out a method* of producing unladderable knitted fabric . . . . Col. 2, lines 11–15.

> The *invention has also for its object a circular machine,* of the English machine type . . . in accordance with the manufacturing processes described above. Col. 4, lines 18–23.

It is only

> *In accordance with the present invention,* [that] *I provide unladderable knitted fabric* formed by a single thread . . . . Col. 1, lines 21–23, Plf. Ex. 7 [Emphasis added.]

The Picard patent clearly indicates through the specifications that the invention was meant to be limited to the fabrics as produced by the particular method and machine described. In fact, the patent is devoted almost exclusively to the method and means of production. The entire discussion focuses on the use of a single-feed circular knitting machine and a fabric made by knitting a single thread.

Not surprisingly, the patent prosecution history reinforces the view that Picard's invention was a run-resistant fabric produced on a single-feed circular knitting machine by the method described in the patent. Initially, the Patent Office required the division of the fabric ("article") and numerous method and machine claims into separate applications. However, after Picard argued that his fabric could only be made by the claimed method, the Patent Office allowed the article and method claims to be made together and only the machine claims were divided out. *Cf. Car-*

dinal of Adrian, Inc. v. Peerless Wood Products, Inc., 363 F.Supp. 1298, 1312 (E.D.Mich. 1973), affirmed, 515 F.2d 534 (6th Cir. 1975). Over the next two years Picard kept amending the specifications, and rewriting the article and method claims. Finally, the Patent Office indicated it would accept the article claims based on the specifications. Picard accepted this finding and in February, 1952, the patent was issued with the two article claims. Although the method claims were disallowed as such, the method and machine instructions for making the claimed patent were thoroughly laid out in the specifications.

It is abundantly clear that Picard viewed his invention as a run-resistant fabric produced by the method and means which eventually were detailed in the patent specifications. In fact, he convinced the Patent Office that the method of production and the fabric produced were inseparable. The final form of the patent excludes the method claims only because Picard could not make them sufficiently definite to withstand Patent Office scrutiny. Picard was not allowed formally to claim his method and machine invention, but it is obvious that by including them in the specifications he intended them to be part of his invention and they were treated as such.

 The claims and specifications must be read together to determine the nature and scope of the invention. United States v. Adams, supra. Once the Picard invention is understood to involve a process for making the claimed fabric, it is apparent as a matter of law that the disclosures required by 35 U.S.C. § 112 have not been made. Undisputed evidence indicates that the patent did not teach one skilled in the art to make, and use, either the method or machine to produce run-resistant fabric. Yet, "it is essential that there be no question that, at the time the application is filed, the invention claimed is fully capable of being reduced to practice." Application of Hawkins, 486 F.2d 569, 574 (Cust. & Pat.App. 1973). As that is not here the case, U. S. Letters Patent No. 2,609,677

issued in 1952 to Lucien Picard must be declared invalid.

As suggested earlier, even were the invention the fabric alone the patent would be invalid. Section 112 requires that the patentee, in exchange for the patent, detail at least one intelligible mode of making his invention. Horwitz, Patent Office Rules and Practice § 718, p. 175. This has not been done.

## IV. Doctrine of Equivalents Does Not Help Defendant

Even had the requirements of § 112 been met, the scope of the Picard patent would not extend to the Hanes hosiery made of fabric produced by knitting two threads. Both the specifications and the claims themselves explicitly limit the patent to fabric made from a single thread:

I claim:

1. Unladderable knitted *fabric formed by a single thread* constituting

 . . . .

2. Unladderable knitted *fabric formed by a single thread* constituting

 . . . . . Col. 12, lines 10–13, 33–35, Plf. Ex. 7 [Emphasis added.]

Defendants invoke the doctrine of equivalents and suggest that the Picard patent should be modified by the Court so that its claims are read to cover fabrics made with more than a single thread. Equivalency is a century-old doctrine formulated by courts of equity. 7 Deller's Walker on Patents § 546, p. 336. Ziegler v. Phillips Petroleum Co., 483 F.2d 858, 860–868 (5th Cir. 1973), cert. denied, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973). It extends a patent beyond its terms to devices that do the same thing, in substantially the same way, with essentially the same results, even though they may differ in form or structure. Ibid. In this case, there is no reason to extend the patent beyond its own terms and the Court declines to do so. Neither the inventor nor the patent owners contemplated the extension of the patent to fabric made from two threads. In the prosecution

of the patent, Picard claimed that the fabric could be made *only* by weaving a single thread. Even in the February, 1962, assignment agreement all parties assumed that the patent was limited to single-thread fabric.

### Article 3

HANES is obligated to pay to THE ASSIGNORS . . . a royalty of U.S.A. $0.05 (Five cents U.S.A.) . . . per one dozen pair hosiery manufactured and sold . . . and comprising single thread stitches as described in the patent or derived from it.

### Article 4

It is agreed that HANES will make every necessary effort . . . to promote and develop manufacture and sale of single thread run-resistant hosiery . . . .. Plf. Ex. BB.

In a July, 1962, letter to Hanes' counsel, defendant Millard reaffirmed this interpretation of the patent:

Indeed, in reality, a patent of addition would have been necessary in order to protect the Picard stitch manufactured on a two feed machine, but the latter was not filed. Plf. Ex. 10, 10a.

Defendants even filed an application for a French patent, which was eventually granted, claiming a method for producing the Picard fabric on a two-feed machine.

The essence of the equivalents doctrine is that one will not be permitted to practice fraud on a patent. *Graver Mfg. Co., Inc. v. Linde Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The doctrine, therefore, does not extend to include products that are essentially different and are conceived by one not following the teaching of the original patent. Deller's *supra,* at 335. Even an identical result will not be sufficient to show infringement where a different means is used. *Ibid.* at § 551, p. 345. There is no question here of fraud on a patent. As found in the Nebel patent interference, the two-thread method was not taught by the Picard single-thread method. It is certainly not a minor variant

that would make application of the equivalents doctrine appropriate.

### V. *Summary Judgment*

Defendants have urged that it is inappropriate to resolve these issues by summary judgment. The Court disagrees. Argument was heard on this motion only after defendants had an opportunity for full discovery of plaintiff's files, which they used. Defendants were advised by a pretrial brief in April, 1976, of all plaintiff's allegations and claims. There has been no surprise or unfairness here. In fact, both parties have had repeated opportunities to respond to opposing arguments, and repeated extensions have been granted defendants to insure they could adequately prepare their case. This case has now been before the Court since 1973 and a prompt resolution is to be desired, particularly since the patent at issue expired seven years ago. Most importantly, the evidence already produced is voluminous and all points in one direction leaving no real issue of fact in dispute. Finally, it should be noted that in *Charvat v. Commissioner of Patents, supra,* the Court of Appeals reached an issue under § 112 which had not been dealt with by the District Court, yet it refused to remand and resolved the issue itself, saying that it was a purely legal matter (*i. e.,* the application of a statute to undisputed facts of record) and that it was in the interests of both parties to terminate the lengthy proceedings. This reasoning clearly applies here.

Plaintiff is therefore granted summary judgment. Judgment in the form attached shall be entered.

### JUDGMENT

For the reasons set forth in its Memorandum Opinion filed this day, the Court hereby

DECLARES:

(1) U. S. Letters Patent No. 2,609,677 issued to Lucien Picard is limited in scope to the run-resistant fabric made from a single thread as claimed therein.

(2) U. S. Letters Patent No. 2,609,677 issued to Lucien Picard did not meet the

requirements imposed by 35 U.S.C. § 112 and is, therefore, invalid.