Leathem S. STEARN, Plaintiff-Appellee,

v.

SUPERIOR DISTRIBUTING COMPANY,
Aggressive Yacht Sales Co.,
Defendants-Appellants.

No. 80–1162.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 26, 1981.

Decided March 24, 1982.

As Clarified on Denial of Rehearing
June 23, 1982.

540

Neal A. Waldrop, Troy, Mich., for defendants-appellants.

William H. Francis, Arthur Raisch, Barnes, Kisselle, Raisch & Choate, Detroit, Mich., William C. McCoy, Jr., Pearne, Gordon, Sessions, McCoy & Granger, Cleveland, Ohio, for plaintiff-appellee.

Before KENNEDY and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Superior Distributing Company and Aggressive Yacht Sails Company appeal from a final judgment holding that they had infringed appellee Stearn's patent for structural and non-structural multi-grooved units for use in changing sailboat jibs. The United States District Court for the Eastern District of Michigan found claims 1, 5, 6, 8 and 11 of the patent in suit, U.S. No. 3,851,609 [hereinafter '609 patent] valid and infringed. Appellants urge that the finding that Stearn was the first inventor is clearly erroneous for the reason, among others, that Stearn's original application for the present invention upon which the District Court relied as the first reduction to practice did not disclose what is now claimed. We agree, and therefore reverse the judgment of the District Court.

The patent in suit relates to a jibstay assembly used in sailboat racing. The jibstay is a wire or rod that runs from the bow of a sailboat to the top of the mast and performs two functions. It serves to support the mast and to support the leading edge, or luff, of the jib sail. A foil is an aerodynamically shaped sleeve device that clips on or fits over the jibstay, supports a sail and freely pivots with the jib sail under changing wind and boat directions. A foil is non-structural in that it does not support the mast.

Prior to the development of multi-grooved units for raising jib sails, racing sailors effected a change of sails in one of two ways. Some racers used separate jibstays, raising a substitute second sail on the unused jibstay and then lowering the jib sail to be replaced. This prevented a substantial loss of boat speed but was undesirable from an aerodynamic standpoint and because it created a clutter with double rigging. Other racers simply removed the unwanted jib sail and sailed without one until the replacement was hoisted which also caused a loss of boat speed. The development of multi-grooved units which contain at least two longitudinal slots adapted to receive and hold the luffs of two jib sails revolutionized sail changing by providing an aerodynamic and compact apparatus capable of supporting two sails simultaneously, thus permitting a second sail to be set before the first sail was let down.

There are two general types of multi-grooved units: structural and non-structural. The structural unit is exemplified by Stearn's product TWIN STAY. TWIN STAY both functions as a jibstay, in that it serves to support the mast, and has the capability of supporting two sails simultaneously. Appellants' TRIFOIL and HEAD FOIL 2 are examples of the non-structural foil form. These products do not support the weight of the mast but do support two jib sails at one time.

Stearn testified that he conceived of the idea of a multi-grooved unit for holding two jib sails in early 1970. The District Court found that the first corroborative support for this was on July 14, 1972 when Stearn's original patent application for a multi-grooved stay was signed. It held that this idea was constructively reduced to practice on August 21, 1972 when the parent application, Serial No. 282,414, was filed. This original or parent application was accompanied by drawings of jibstays in two forms. The first form, Figures 3 and 4, had two diametrically opposed grooves running along the entire length of an elliptical rod. The second form, Figure 5, was a single groove rod. The parent application contained claims directed to a torsion resistant stay and a system for rotating the stay 180° to permit sail changing. Figures 3, 4 and 5 all reveal structural forms in that both the single and double grooved rods support the weight of the mast in addition to holding the jib sail.

Stearn formed a company called Stearn Sailing Systems in the fall of 1972 and set out to make an aluminum, structural, torsionally resistant, rotatable jibstay with diametrically opposing grooves called the TWIN STAY. Drawings were submitted to a manufacturer in December 1972 and in May 1973 Stearn received his prototypes. The TWIN STAY prototype was successfully tested in a sailboat race the day after delivery and all five units were immediately sold. On August 3, 1973 Stearn filed a second application with the Patent Office as a continuation-in-part [hereinafter CIP] of the parent application. The CIP was accompanied by claims, a specification and drawings which expressly revealed non-structural multi-grooved foils and structural multi-grooved stays. Appellants' TRIFOIL and HEAD FOIL 2 were found by the District Court to fit squarely within claims 1, 5, 6, 8 and 11 of the '609 patent, a finding with which we agree. The '609 patent based on the CIP was issued to

Stearn on December 3, 1974 and characterized by him as an article, rather than a method, invention.

Appellant Superior, a Minnesota proprietorship comprised of Rolf Lagerquist and his wife, makes the non-structural foils that are alleged to infringe Stearn's '609 patent. These are the TRIFOIL, with three grooves, and the HEAD FOIL 2, with two grooves. It also makes the HEAD FOIL, its original product, which is not alleged to infringe. Lagerquist obtained a patent for HEAD FOIL but did not attempt to secure a patent for either TRIFOIL or HEAD FOIL 2. In March 1972 Lagerquist's father wrote to him suggesting that an additional groove be added to the HEAD FOIL concept alongside of the existing groove to allow the raising of one sail while another was still hoisted. A card cut-out was enclosed in the letter and followed up in April with a full scale model. In late 1972 and the early spring of 1973 Lagerquist worked with the employees of two plastics companies on appropriate designs for a multi-grooved non-structural foil. Drawings for dies were delivered to one of the companies, Astro, on May 2, 1973 and prototypes of what was to become TRIFOIL were delivered to Lagerquist in early June or July. TRIFOIL was installed on Lagerquist's sailboat and used successfully in early June 1973. Astro decided not to produce TRIFOIL so Profile, another plastics company, made new and only slightly modified dies. TRIFOIL was exhibited in October 1973 and the first sale was made in November 1973. HEAD FOIL 2 was produced subsequently.

Stearn filed this action on May 3, 1976 alleging that appellants' TRIFOIL and HEAD FOIL 2 infringed his '609 patent. The District Court found literal infringement of the '609 patent as issued and rejected the appellants' contentions that Lagerquist was the first inventor of the multi-grooved non-structural foil, 35 U.S.C.A. § 102(g) [1]; that the invention claimed by

---

1. 35 U.S.C.A. § 102(g) reads:

A person shall be entitled to a patent unless—

. . . . .

(g) before the applicant's invention thereof the invention was made in this country by

Stearn was "obvious", 35 U.S.C.A. § 103[2]; and that Stearn's patent relied on prior art not cited to the Patent Office, 35 U.S.C.A. § 102. To avoid deciding whether the CIP or other amendments impermissibly broadened the claims in the parent application and included new matter, the District Court tested TRIFOIL and HEAD FOIL 2 against the parent application, and found that they infringed claim 15 of the original application by applying the doctrine of equivalents.

Appellants have appealed from all aspects of the judgment. In addition they urged on appeal what the District Court did not decide—that the CIP contained new matter which precluded its relation back to the filing date of the parent application. Since defendants' non-structural foil forms were openly used before the CIP application forming the basis of the '609 patent was filed, they argue that Stearn was not first in reducing his invention to practice.

## AUGUST 3, 1973 CONTINUATION–IN–PART: RELATION BACK AND THE NEW MATTER ISSUE

■ The District Court found that Stearn was the first to conceive and constructively reduce the multi-grooved idea to practice since he did so at least by August 1972, when the parent application was filed. The disclosures made in the original application, it found, formed the basis for the '609 patent. Since Lagerquist conceived and reduced the TRIFOIL to actual practice between August 21, 1972, the filing date of the parent application, and August 3, 1973, the filing date of the CIP, Lagerquist would be a prior inventor of the article alleged to infringe unless the CIP relates back to the parent application. It is

implicit in the District Court's holding that Stearn's '609 patent was valid and infringed that the non-structural multi-grooved foil concept expressly disclosed in claims 1 and 8 of the CIP was inherently disclosed in claim 15 of the parent application and related back to the filing date of the parent. Although the District Court disclaimed the need to make a finding on whether any amendments to the parent application were proper the court did state that "claim 15 of the application filed on August 21, 1972 was sufficiently broad to cover the clip-on [foil] and is not limited to torsion resistant units." However, relation back of claim 1 of the CIP and '609 patent, the broadest of the patent as issued, to claim 15, the broadest claim of the parent application, is possible only if the CIP disclosed an invention which had previously been disclosed and contained no new material. 35 U.S.C.A. §§ 120, 132.

■ The standard of review on appeal from the District Court's findings on new matter is whether the finding is clearly erroneous. *Cardinal of Adrian, Inc. v. Peerless Wood Products, Inc.*, 515 F.2d 534, 539 (6th Cir. 1975). Moreover, the Patent Office's judgment on whether an amendment is an embellishment or is of patentable importance is entitled to special weight. *Acme Highway Products Corp. v. D. S. Brown Co.*, 431 F.2d 1074, 1081 (6th Cir. 1970), *cert. denied*, 401 U.S. 956, 91 S.Ct. 977, 28 L.Ed.2d 239 (1971).

■ The objectives of 35 U.S.C.A. § 112, which requires that the patentee's application disclose his invention, are that others may construct and use the invention after the expiration of the patent and that the public be informed during the life of

---

another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

**2.** 35 U.S.C. § 103 states:

A patent may not be obtained though the invention is not identically disclosed or de-

scribed as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

the patent of the limits of the monopoly asserted so that the public may know which features may be safely used or manufactured without a license and which may not. *Schriber-Schroth Co. v. Cleveland Trust Co.*, 305 U.S. 47, 57, 59 S.Ct. 8, 12, 83 L.Ed. 34 (1938). The patent monopoly does not extend beyond the invention described and explained as the statute requires. *Permutit Co. v. Graver Corp.*, 284 U.S. 52, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163 (1931). Accordingly, an application for a patent cannot be broadened so as to embrace an invention not described in the application as filed, at least when adverse rights of the public have intervened. *Schriber-Schroth, supra*, 305 U.S. at 57, 59 S.Ct. at 12.

■ Generally, an applicant may amend the specification, drawings and claims originally presented in the parent application. 35 U.S.C.A. § 132 prevents an applicant from introducing new matter into an application by way of an amendment or continuation application. New matter is matter involving a departure from or in addition to the original disclosure, 37 C.F.R. § 1.118. The filing of a CIP is not an admission that new matter is contained therein. *See Hughes Aircraft Co. v. United States*, 640 F.2d 1193, 1198 (Ct.Cl.1980). In *Acme Highway, supra*, at 1081, the Sixth Circuit stated that a CIP need not be construed as containing new material if it contains mere embellishments or technical improvements of a feature disclosed in the original application, which does not contribute to its novelty, utility or non-obviousness. New matter is not introduced by amendments, continuation applications or CIPs which merely clarify or make definite that which was expressly or inherently disclosed in the parent application or which conform the specification to matter originally disclosed in the drawings or claims. *Cardinal of Adrian, supra*, at 538; *Triax Co. v. Hartman Metal Fabricators, Inc.*, 479

F.2d 951, 956–57 (2d Cir. 1973); *Technicon Instruments Corp. v. Coleman Instruments, Inc.*, 255 F.Supp. 630 (N.D.Ill.1966), aff'd, 385 F.2d 391 (7th Cir. 1967). Added subject matter is not new matter when it is "something that might fairly be deduced from the original application." *Acme Highway, supra*, at 1080, citing *Cincinnati Rubber Mfg. Co. v. Stowe-Woodward, Inc.*, 111 F.2d 239, 242 (6th Cir. 1940). Under the *Acme Highway* doctrine of inherency, continuity of disclosure is not broken and the earlier filing date is not lost by making explicit structural and operational disclosures in a CIP if they were implicit in the parent application. The test for inherency is whether a person skilled in the relevant art, reading a parent application, would have found the CIP disclosures in question to be inherent in the disclosures of the parent and would not have to undertake any independent experimentation in order to do so. *Acme Highway, supra*, at 1080. This aspect of the doctrine of inherency is necessarily limited, however, by limits in the doctrine set forth in *Schriber-Schroth, supra*, 305 U.S. at 57, 59 S.Ct. at 12, and by the description-of-the-invention requirement of section 112. *Wagoner v. Barger*, 59 CCPA 1213, 463 F.2d 1377, 1380 (C.C.P.A.1972); *Interchemical Corp. v. Watson*, 145 F.Supp. 179, 182 (D.D.C.1956), aff'd, 251 F.2d 390 (D.C.Cir.1957).

■ 35 U.S.C.A. § 120 permits a subsequent application or amendment to relate back to the filing date of a prior application disclosing the same invention. The same invention test is met if the amendment or subsequent application is for an invention disclosed in the manner provided by the first paragraph of 35 U.S.C.A. § 112 [3], is submitted by the same inventor, is filed before the abandonment of the first application and specifically refers to the parent application. To the extent that a CIP application adds new matter, claims that are dependent upon the new matter

---

**3.** The first paragraph of 35 U.S.C.A. § 112 states:

The specification shall contain a written description of the invention and of the manner and process of making use of it, in such full, clear, concise and exact terms as to

enable any person skilled in the art to which it pertains, or with which it is most clearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

are entitled to the filing date of the CIP only and not that of the parent application. *Muncie Gear Works v. Outboard, Marine & Co.*, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 (1942); *Coats Loaders & Stackers, Inc. v. Henderson*, 233 F.2d 915, 922 (6th Cir. 1956); *In re Scheiber*, 587 F.2d 59 (C.C.P.A. 1978). The inquiry required by section 120 demands a comparison of 1) the claims of the parent and the CIP application and 2) any other disclosures made in the applications such as the specification and drawings. *Acme Highway, supra*, at 1079.

In the instant case there is no dispute that the CIP was filed by the same inventor, Stearn, that it specifically referred to the parent application and that it was filed prior to the abandonment of the first application. It is undisputed that the non-structural multi-grooved foils were not expressly disclosed in any claims, drawings or specification in the parent application. At issue is whether the non-structural multi-grooved foil disclosed in the drawings, specification and in claims 1 and 8 of the CIP and '609 patent had been inherently disclosed in claim 15 of the parent application in the manner provided for by section 112, or whether the foil or other non-structural forms constituted new matter.

### AUGUST 21, 1972 PARENT APPLICATION

Claims 1–10 of the parent application reveal a torsion resistant stay with diametrically opposed longitudinal slots that is capable of being rotated. Claims 11–14 teach the method of changing from a first sail to a second while underway using a compulsory three-step rotation process. Claims 15–17 address the apparatus to be used in hoisting the second sail while the first is hoisted. Claim 15 of the parent application reads:

Apparatus for use in hoisting a second sail while a first sail is already hoisted and set comprising, *in combination* :

an elongated *stay* having a longitudinal axis, at least first and second longitudinal slots, outer surfaces connecting said slots, and first and second inner surfaces, each

of said inner surfaces generally defining a portion of a cylinder and a longitudinal axis of curvature; and,

*mounting means* for mounting said stay so that said stay is adapted *to be rotated* about its longitudinal axis. (emphasis added)

Claim 15 makes no express mention of torsional resistance in the stay.

The specification reveals that:

"It is an object of the present invention to provide a *stay* which can accommodate two separate feed systems to allow two sails to be hoisted at the same time, thus reducing the time lost in a race during the sail change." (emphasis added) A secondary object was to provide a *jibstay* with torsional rigidity similar to that of the present rod-type stay. The specification describes the mounting for the stays. "The jibstay 20 is *anchored* at its upper and lower ends by means which permit it *to be rotated* about its longitudinal axis." (emphasis added)

Drawings of both forms of the invention in the parent application reveal an elongated member on a swivel. Only the second form, Figures 3 & 4, has two grooves running along opposite edges of an elliptical solid rod for its entire length. The first form, Figure 5, has only a single groove. The two manifestations of the invention disclosed in the drawings differ only in the numbers of grooves they possess. The drawings reveal structural stays in that they are in tension with the mast in addition to holding the sail.

### AUGUST 3, 1973 CIP APPLICATION

The claims in Stearn's CIP application are quite different from his original application. Whereas the focus in the original application was on a torsionally resistant rotating structural stay with one or more grooves that is in tension with the mast, the focus in the CIP application is strictly on a multi-grooved unit. Claim 1 of the CIP, which forms the basis for claim 1 on the '609 patent, reads:

A jibstay assembly for a sailboat comprising a rod member attached between the bow of the boat and the top portion of the mast, said rod member being generally rounded in cross sectional shape and having two grooves inset therein which are adapted to receive and hold the beads at the luff of the jib sails.

Claim 8 of the CIP and '609 patent is also broad, although not as broad as claim 1. Claim 8 of the CIP reads:

A jibstay assembly for a sailboat comprising; a stay from the bow of a boat to the top portion of the mast, a plurality of members mounted on said stay, each individual member having two grooves therein adapted to receive and retain the bead at the luff of a jib, and means fastening together and aligning said members to form a continuous unit substantially throughout the length of said stay.

Torsional resistance and rotational capacities are expressly made optional in the CIP application. The multi-grooved units may be structural or non-structural and include foils.

The specification in the CIP application expressly frees the multi-grooved assembly from stay form, torsional requirements or the ability to be rotated. The foil forms of the invention swing freely.

Drawings of the many forms of structural and non-structural multi-grooved units reveal grooves in a wide variety of placements; some are diametrically opposed as in Figures 3 and 4 of the parent application; some contain two grooves facing the rear; others are staggered.

In its memorandum opinion the District Court excluded torsional resistance as an essential element of the invention disclosed in claim 15 of the parent application since language of torsional resistance was not contained in that claim. The lower court considered the patentable idea in claim 15 to be solely the double grooved concept. The District Court impliedly excluded, without comment, the requirements in claim 15 that the double groove apparatus be a "stay" and that it be mounted to enable it "to be rotated."

It is impossible to read out the "elongated stay" or "to be rotated" language in claim 15 as unessential to the invention disclosed for several reasons. First, the single apparatus described in claim 15 is an aggregate of several indispensible elements which comprise, in combination, the invention disclosed in that claim. A mounting means, such that the multi-grooved stay is adapted to be rotated, may not be excluded as an unessential element since the language of the claim mandates that all elements of the apparatus be read together in the conjunctive. The requirement of an elongated *stay* similarly may not be excluded. Second, the significance of the word "be" in the phrase "to be rotated" is that it changes "rotated" from the active to the passive mood. The word "be" requires that external action be taken to compel rotation and precludes a characterization of the apparatus in claim 15 as being a freely rotatable structure. Third, when claim 15 is read against the backdrop of the specification which describes the mounting means which allows the stay to be rotated, it is necessary that the multi-grooved stay be anchored by means, including but not limited to swivels, which permit it to be rotated. The anchoring and "to be rotated" requirements in the specification are antithetical to the freely swinging non-structural foils included within claims 1 and 8 of the CIP and '609 patent. Fourth, read against the method claims, claims 11–14 of the parent application, the only method taught for utilizing the apparatus is the three-step rotation process. Finally, the drawings in the parent application clearly reveal structural stays, which support the mast, anchored on a rotatable mounting. It is difficult to accept the District Court's finding that the inventive idea in the parent application as a whole was the double grooved idea when the double groove does not even constitute a common denominator between the two forms of the single invention disclosed in Figures 3 and 4 and Figure 5 of the parent application.

## DOCTRINE OF INHERENCY

The District Court found that racing sailors and persons engaged in sailboat

construction were persons skilled in the relevant art for purposes of applying the obviousness test and, presumably the inherency test. Stearn seems to suggest it was but the state of the art and not invention to substitute non-structural multi-grooved foils in claims 1 and 8 of the CIP for the structural multi-grooved stays in claim 15 of the parent application. While this may ring true in the context of determining whether Lagerquist's TRIFOIL and HEAD FOIL 2 were obvious in light of Stearn's disclosures in the parent application relating to the method of changing sails contained in claims 11–14, assuming Lagerquist had attempted to patent these items, it does not follow that this constitutes inherency for purposes of making the new matter determination. Claim 15 of the parent application is a combination claim and is very specific. A non-structural multi-grooved foil is not something which might be fairly deduced in light of the combination described in claim 15. To freely swing on a stay is an unlikely property of an apparatus which must be mounted and rotated; to clip on or slip over a structural unit is an unlikely property of an apparatus which must be in tension with the mast. Even assuming, *arguendo*, that a person skilled in the art would have deduced the non-structural multi-grooved foil form from claim 15 in the parent application, that was not the invention described by Stearn in claim 15. When something is claimed specifically, as in combination claim 15, the applicant cannot amend an application by a CIP or otherwise to claim attributes that are inconsistent with those stressed in the parent. *Schriber-Schroth, supra,* 305 U.S. at 57–60, 59 S.Ct. at 12–14. *See also* 35 U.S.C.A. § 112.

A comparison of the claims, specification and drawings in the parent and CIP applications reveals that claim 15 of the parent application disclosed a multi-grooved stay to be mounted, anchored and rotated. Inferentially, it must also be torsionally resistant, for although not expressly required by the claim, it would otherwise snap or bend during forced rotation. Claims 1 and 8 of the CIP disclose units whose only essential attribute is that they be multi-

grooved and capable of accepting the bead at the luff of jib sails. Omitted from the CIP application's claims, specification or drawings is the requirement that the apparatus be able to be rotated, or by inference, that it be torsionally resistant. The non-structural, freely swinging encapsulating sleeve, double grooved foils in the CIP application contain features and a method not expressly or inherently disclosed in the drawings, specification or claims of the parent application and not inherent in the disclosures of the parent application to a person reasonably skilled in the art. *Acme Highway, supra,* at 1079. Here Stearn does not merely seek the right to clarify broad or ambiguous claims. Rather he seeks to use the concept of inherent disclosure in a manner which would extend his monopoly beyond the limits of the invention originally claimed.

Additional factors indicate that non-structural foils were not disclosed in the parent application. First, the amendments which were submitted subsequent to the Patent Office transmittal rejecting all claims in the parent application and prior to the filing of the CIP application, cancelled claim 15 but added three additional claims, all of which required torsional resistance in the proposed stays. Second, the joint pre-trial order contained two stipulations directed toward the parent application as a whole. Stipulation 3 stated that the parent application "contained drawings of and a description of the structural unit form of a jibstay assembly but did not show or describe the non-structural unit form of jibstay assemblies." Stipulation 4 said that all seventeen claims of the parent application were directed toward torsion resistant stays and a method for sail changing involving torsion resistant stays. Stearn's counsel, McCoy, sought to amend the pre-trial order to exclude claim 15 of the parent application from stipulations 3 and 4, claiming their inclusion to be his error. Leave to amend was refused by the trial court and the admissions stand. Finally, Williams, Stearn's expert witness, testified at trial that there was not a disclosure in the parent application sufficient to support claim 8

**548**

of the CIP and '609 patent, the non-structural foil form of Stearn's apparatus. Williams did consider that the broad concept of a jibstay with two grooves contained in claim 1 of the CIP and '609 patent was broader than claim 8 and encompassed it. The double groove concept in claim 1 was considered by Williams to be within the scope of claim 15 of the patent. The only construction to be given this testimony to avoid inconsistency is that Williams considered the foil manifestation of the apparatus to be inherently, rather than expressly, disclosed in claim 1's broad two groove concept. Williams' failure to address the "in combination", "stay" and "to be rotated" language of claim 15 prevents it from being accepted as substantial evidence that claim 1 of the CIP is within the scope of claim 15 of the parent application. The "in combination" requirement of claim 15 mandates that the multi-grooved apparatus be considered as a totality with its other components and precludes a distillation of the invention to merely the two grooved concept. With respect to the "to be rotated" and "anchored" elements, Williams himself acknowledged that neither the drawings nor the specification of the parent application show a foil to be mounted on a stay. His discourse on the dispensability of the three-step rotation process taught in the parent application is no more than a discussion on the practical use of the multi-grooved stay learned subsequent to the filing of the parent application. Although Williams did not address the "elongated stay" requirement in claim 15, it would be difficult to characterize a foil, which is definitionally parasitic to a stay, in that it is clipped on it or fitted over it, as being the same thing as a stay itself which is in tension with the mast.

The clear implication of the cancellation of claim 15, the inclusion of three new claims uniformly containing language of torsional resistance, the admissions in the pre-trial order and so much of Williams' testimony as is consistent with the description-of-the-invention contained in claim 15 is that Stearn did not include non-structural foils, such as appellants' TRIFOIL and HEAD FOIL 2, in the scope of his parent application. These forms of multi-grooved units are afterthoughts. These factors reinforce the conclusion that new matter was added in the CIP under the test set forth in *Acme Highway.*

We conclude that the disclosures relied upon by Stearn in claim 15 are not adequate to meet the description-of-the-invention requirements under section 112 or under a theory of inherent disclosure. A generic claim in a CIP cannot have its genesis in a non-generic claim in the parent application. It necessarily follows that the requirements of section 120 have not been met. Accordingly we find that the District Court's implied finding that claim 1 of the CIP and '609 patent was within the scope of claim 15 of the parent application, and that the CIP and '609 patent did not include new material is clearly erroneous. As such, claims 1, 5, 6, 8 and 11 of the '609 patent directed toward non-structural multi-grooved foils are not entitled to the August 21, 1972 filing date of the parent application and are invalid by reason of appellants' priority of invention.

The judgment of the District Court is reversed, and this cause is remanded for proceedings consistent with this opinion.