**MAX DAETWYLER CORP. and MDC Max Daetwyler, A.G.**

**v.**

**INPUT GRAPHICS, INC., Benton Graphics, Inc., Joseph Halbherr and Rufus Benton.**

**Civ. A. No. 81–1140.**

United States District Court, E.D. Pennsylvania.

May 20, 1985.

Manny D. Pokotilow, Caesar, Rivise, Bernstein & Cohen, Philadelphia, Pa., for plaintiffs.

Peter T. Cobrin, Stempler & Cobrin, P.C., New York City, Robert C. Podwil, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Benton Graphics and Rufus Benton.

Karl Spivak, Steele, Gould & Fried, Philadelphia, Pa., for Input Graphics and Joseph Halbherr.

## OPINION

LOUIS H. POLLAK, District Judge.

Plaintiffs brought this patent infringement and unfair competition suit in March, 1981. They allege that defendants have manufactured and sold a doctor blade ("Benton blade") which infringes a patent held by plaintiff ("Daetwyler blade") and that defendants have falsely represented the quality and nature of their doctor blade

in violation of the Lanham Act. 15 U.S.C. § 1125(a). A doctor blade, the product at the center of this dispute, is a blade-shaped device for wiping excess ink from the printing surface used in the photogravure printing process. That product and the procedural development of this litigation are discussed at greater length in the earlier opinions in this case at 541 F.Supp. 115 (1982), 545 F.Supp. 165 (1982), and 583 F.Supp. 446 (1984).

Currently pending are (1) defendants' renewed motion for summary judgment on plaintiffs' Lanham Act claim; (2) defendants' motion to sever the Lanham Act claim from the patent infringement claim and patent invalidity counterclaim for purposes of trial; and (3) defendants' motion *in limine* to preclude plaintiffs from claiming the benefit of the filing dates of earlier applications for the patent at issue in this suit. I will consider these motions in sequence.

### 1. *Motion for summary judgment*

In 1982, I denied defendants' motion for summary judgment on the Lanham Act claim. 545 F.Supp. 165. The opinion discussed the five elements which must be shown to establish a Lanham Act violation. They are: "(1) that the defendant has made false or misleading statements as to his own product; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travelled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *See Ragold, Inc. v. Ferrero, U.S.A., Inc.*, 506 F.Supp. 117, 124 (N.D. Ill.1980); *see also American Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165–66 (2d Cir.1978)." 545 F.Supp. at 171. The current motion contends that summary judgment is now appropriate on the Lanham Act claim since the record establishes that plaintiffs lack evidence to establish two of the necessary elements of that claim—that consumers were or could have been deceived by defendants' representa-

tions and that the representations allegedly made by defendants were false.

### a) *consumer deception*

■ Defendants' first argument in support of the motion for summary judgment is that plaintiffs do not have the evidence necessary to establish that the alleged misrepresentations actually deceived or had a tendency to deceive a substantial portion of the intended audience. The primary basis for this argument is defendants' assertion that plaintiffs have not performed a consumer survey on the question of consumer deception. Defendants assert that such a survey is essential to make out a Lanham Act violation. Plaintiffs do not dispute that they have no consumer survey evidence. They contend, however, that such evidence is unnecessary since plaintiffs need only show a tendency to deceive in order to obtain injunctive relief.

Most of the courts which have considered what must be proven to make out this element of a Lanham Act claim have held that injunctive relief may be obtained by showing only that the defendant's representations about its product have a tendency to deceive consumers while recovery of damages requires proof of actual consumer deception. *E.g., Schutt Mfg. Co. v. Riddell Inc.*, 673 F.2d 202 (7th Cir.1982); *Black Hills Jewelry Mfg. Co. v. Gold Rush Inc.*, 633 F.2d 746, 753–54 (8th Cir.1980); *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir.1978); *Hesmer Foods Inc. v. Campbell Soup Co.*, 346 F.2d 356 (7th Cir.1965), *cert. denied*, 382 U.S. 839, 86 S.Ct. 89, 15 L.Ed.2d 81 (1965); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648–49 (3d Cir.1958); *Mennen Co. v. Gillette Co.*, 565 F.Supp. 648 (S.D.N.Y.1983) *aff'd*, 742 F.2d 1437 (2d Cir.1984); *Walker-Davis Publications, Inc. v. Penton/IPC, Inc.*, 509 F.Supp. 430 (E.D. Pa.1981); *Toro Co. v. Textron, Inc.*, 499 F.Supp. 241 (D.Del.1980); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257 (D.Del.1979); *John Wright, Inc. v. Casper Corp.*, 419 F.Supp. 292 (1976) *aff'd in part, rev'd in part*, 587 F.2d 602 (3d Cir.1978); *Skil Corp. v. Rockwell International Corp.*,

375 F.Supp. 777 (S.D.N.Y.1974); *Ames Publishing Co. v. Walker-Davis Publications, Inc.*, 372 F.Supp. 1 (E.D.Pa.1974). Therefore, there may be a basis upon which a plaintiff may obtain injunctive relief without presenting any evidence regarding the reactions of consumers to the representations made by the defendant.

■ Plaintiffs also assert that they may recover damages without establishing actual consumer deception.[1] In support of that position, plaintiffs cite *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978), which quoted Judge Lasker's statement in *American Brands, Inc. v. R.J. Reynolds Co.*, 413 F.Supp. at 1356 (S.D.N.Y.1976), that "[i]f a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product." Plaintiffs argue that they will present evidence that the representations made by defendants with regard to their product are actually false. Therefore, plaintiffs contend, it is not necessary for them to show more than a tendency to deceive to obtain damages.

Despite the apparent breadth of the language cited by plaintiffs on this point, I have not discovered any decisions which have applied this principle to grant damages to a plaintiff who had failed to show actual consumer deception. Furthermore, although this issue has not been discussed recently by the Court of Appeals for the Third Circuit, in *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir.1958), that court concluded that:

.... a plaintiff in order to make out a cause of action for damages under Section 43(a) [of the Lanham Act] must show not only that the defendant's advertisement is false but also that this falsification actually deceives a portion of the buying public.... This does not

place upon the plaintiff a burden of proving detailed individualization of loss of sales. Such proof goes to the quantum of damages and not to the very right to recover. However, there must be a showing of some customer reliance on the false advertisement.

I conclude, however, that it is not necessary to determine at this time whether plaintiffs could recover damages without proof of actual deception in this case.[2] This issue is presented in the form of a motion for summary judgment. In support of that motion defendants have presented no evidence that customers were not actually deceived by defendants' representations. Without such evidence presented in support of the motion, plaintiffs are under no obligation to present countervailing evidence that actual consumer deception has occurred and can rely solely upon their pleadings. Thus, since plaintiffs have alleged a claim to damages under the Lanham Act due to alleged misrepresentations by defendants, they have sufficiently pleaded their claim of deception for the Lanham Act claim to survive the current motion.

Defendants argue, however, that to establish actual deception, it is essential for plaintiffs to present a consumer survey. If defendants are correct on this evidentiary requirement, and if actual deception is a necessary element of a Lanham Act damages claim, then summary judgment would be appropriate despite defendants' failure to present evidence of a lack of actual deception. In other words, if plaintiffs are required to present a consumer survey, defendants may be entitled to summary judgment if defendants can establish that no survey has been prepared although discovery has closed.

In support of their position that a consumer survey is a necessary item of evi-

---

1. J. Thomas McCarthy, in his treatise *Trademarks and Unfair Competition* (1973), states that consumer deception must be established to recover damages intended to compensate for lost profits. However, he suggests that if damages are calculated as compensation for other types of injury, such as lost goodwill, it may be possible to recover without establishing consumer

deception. J.T. McCarthy, *Trademarks and Unfair Competition* § 27.5(B) (1973).

2. Therefore, I need not consider defendants' alternative assertion that summary judgment is at least appropriate with respect to plaintiffs' claim for damages if not with respect to the claim for injunctive relief.

dence in a Lanham Act suit, defendants point to *American Brands, Inc. v. R.J. Reynolds Tobacco Co.*, 413 F.Supp. 1352, 1356–57 (S.D.N.Y.1976). In that case, the court said:

> We are dealing not with statements which are literally or grammatically untrue; and the tendency to deceive alleged here does not arise out of possible confusion of one product with another. Rather, we are asked to determine whether a statement acknowledged to be literally true and grammatically correct nevertheless has a tendency to mislead, confuse or deceive. As to such a proposition "the public's reaction to [the] advertisement will be the starting point in any discussion of the likelihood of deception.... If an advertisement is designed to impress ... customers, ... the reaction of [that] group[s] will be determinative." 1 Callman: Unfair Competition, Trademarks & Monopolies at § 19.2(a)(1) (3rd ed. 1967). A court may, of course, construe and parse the language of the advertisement. It may have personal reactions as to the defensibility or indefensibility of the deliberately manipulated words. It may conclude that the language is far from candid and would never pass muster under tests otherwise applied—for example, the Securities Acts' injunction that "thou shalt disclose"; but the court's reaction is at best not determinative and at worst irrelevant. The question in such cases is—what does the person to whom the advertisement is addressed find to be the message?: .... The fatal defect of both the American and Reynolds cases is that in neither instance has any evidence of substance been submitted which establishes the "determinative" reaction of the consumer to the respective advertisements. The sole evidence submitted by American as to customer reaction to the NOW advertisements was that of David Doer, its Section Sales Manager in the Pennsylvania, New Jersey and Delaware territories, who testified to three or four conversations with NOW buyers who appear to have been confused by NOW advertisements. Putting aside the fact that such statements were reported on a hearsay basis, one can hardly regard the report of three or four casual conversations with smokers as representative of the views of the millions of smokers by whom NOW's advertisements are read.

This opinion does not state that a consumer survey is necessary, it merely states that in certain types of Lanham Act cases it is necessary to present evidence which establishes the reaction of a significant segment of the customer base to the alleged misrepresentations. In addition, under the facts of that case, it may be that a consumer survey would have been the only effective method by which to gain this evidence. However, in that suit, unlike the present suit, the product in question—cigarettes—was used by millions of consumers. Under such circumstances, a consumer survey may be the only method for obtaining a significant enough sample to be representative of the full population of the product's consumers. But the class of consumers of doctor blades is considerably smaller. Therefore, it may be possible to satisfy a factfinder that consumers have been deceived or are likely to be deceived by means other than a survey.

Although there are numerous decisions in which courts have considered the persuasiveness or admissibility of consumer surveys, I have discovered none which has mandated the use of such evidence. In fact, in *Schutt Manufacturing Co. v. Riddell, Inc.*, 673 F.2d 202, 207 (7th Cir.1982), the court concluded that:

> [a] party seeking such relief [money damages] is required to show not only the likelihood of such confusion, but must demonstrate that it has been damaged by actual consumer reliance on the misleading statements.... Such reliance may be shown not only by evidence of actual diversion of sales, but also by such proof of actual customer deception as surveys, *see, e.g., Burrough II* at 578, or testimony of a dealer, distributor, or customer on the actual deception issue, ...

This suggests that evidence other than a consumer survey may be relevant and suf-

ficient to show consumer confusion. Accordingly, I conclude that consumer surveys, although useful to the finder of fact in many Lanham Act cases, are not required as a matter of law to establish consumer deception. Therefore, I cannot grant summary judgment on the Lanham Act count of plaintiffs' twice amended complaint on the ground that plaintiffs cannot establish actual deception or a tendency to deceive a substantial portion of the intended audience.

### b) *whether the representation is false or misleading*

■ Defendants' motion also reasserts an argument raised in their earlier motion for summary judgment on the Lanham Act claim—that the representations which they made about their doctor blade are not false. To understand this contention, it is first necessary to understand the particular representations made by defendants which plaintiffs allege were false or misleading.

The Lanham Act claim is found in Count II of plaintiffs' "twice amended complaint" (hereinafter "second amended complaint").[3] The relevant allegations are in paragraphs 11 and 12.

11. On information and belief the Defendants have falsely represented that the doctor blade distributed by them under the name "The Benton Blade" is "even more durable than other doctor blades made of the same high-quality imported steel."

12. On information and belief the Defendants have falsely advertised the quality and nature of the Defendants' doctor blades in order to sell their own doctor blades which are an infringement of the Plaintiffs' patent.

Defendants have focused their motion on the alleged misrepresentation discussed in paragraph 11—that the Benton blade is more durable than other doctor blades made of the same high-quality imported steel. At the time of the last motion directed to this issue, defendants produced the affidavit of Rufus Benton which stated

that the Benton blade's design allowed it to be used for 2 million printing cylinder revolutions before replacement as compared to the .5 million revolution life-span of the Daetwyler blade. The Benton affidavit was opposed by the affidavit of Peter Daetwyler which stated that the term "durable," as used with regard to doctor blades, means not only the length of time that a blade can be used but also the length of time over which the blade produces high quality printing. The affiant then stated that he had seen Benton blades in use and had been told about use of those blades by others. Daetwyler went on to say that he had seen Benton blades which had stopped producing high quality copies more rapidly than Daetwyler blades would have in similar circumstances. After considering these submissions, I concluded that the Daetwyler affidavit raised a genuine issue of material fact as to the accuracy of the representation that the Benton blade was more durable.

Defendants now contend that the assertions made in the Daetwyler affidavit are no longer valid in light of the statements made by Peter Daetwyler at his deposition. During that deposition, Peter Daetwyler was asked about the circumstances under which he had seen Benton blades which had not produced high quality printing for as long as Daetwyler blades. That testimony shows that the only time at which Mr. Daetwyler could remember having seen a Benton blade in operation, he had seen it producing acceptable quality. All of the other situations which Mr. Daetwyler could recall in which he was aware that the Benton blade was not producing high quality copies for as long as a Daetwyler blade were circumstances in which Mr. Daetwyler's knowledge was gained second-hand from a customer.

Since the same knowledge which underlay the affidavit was the basis for the discussion of these issues during the deposition, it is apparent that the recitations in

---

**3.** In each of the earlier versions of the complaint, including the amended complaint which was before this court at the time of the last motion for summary judgment on the Lanham Act claim, the second count was the Lanham Act claim.

Mr. Daetwyler's affidavit regarding the relative abilities of Daetwyler and Benton blades to produce high quality printing were based upon hearsay. However, affidavits which support or oppose a motion for summary judgment are only cognizable to the extent they relate the personal knowledge of the affiant. Fed.R.Civ.Pro. 56(e). Although it was possible to infer from the affidavit at the time it was submitted that the statements made therein regarding the relative durabilities of Benton and Daetwyler blades were made on personal knowledge, the deposition testimony of Peter Daetwyler has removed that possible inference. Thus, the only statement in the Daetwyler affidavit based upon personal knowledge which opposes the representation of the Benton affidavit regarding the relative durabilities of the two blades is the statement that durability is not merely a matter of the number of revolutions over which a blade can be used but the number of revolutions over which the blade produces high quality printing.

This statement does not refute the factual representation made in the Benton affidavit that Benton blades need only be replaced after 1.5 to 2 million revolutions of the cylinder while the Daetwyler patent states that plaintiffs' blade will last for .5 million revolutions. The statement in the Daetwyler affidavit suggests that it may be possible to produce evidence to the effect that the Benton blade can only product high quality printing during a small portion of the 1.5 to 2 million revolutions over which it is possible to use that blade. However, that evidence or other evidence that, in practice, the Benton blade has not produced high quality copies for as long as the Daetwyler blade is not present in the record on this motion or the earlier motions filed in this action.

Plaintiffs' response to the present motion states that plaintiffs intend to produce at least one printer to testify who will say that in his experience the Benton blade has been incapable of producing high quality printing for as long as a Daetwyler blade. However, when the party seeking summary judgment presents cognizable evidence such as the Benton affidavit which refutes

a particular element of the plaintiff's claim, the plaintiff must shoulder the burden of producing countervailing evidence and cannot rely upon the pleadings or upon representations as to what evidence will be produced at trial.

Because plaintiff has not provided cognizable evidence to refute defendants' affidavit regarding the relative durabilities of the Benton and Daetwyler blades, on the basis of the present record I must conclude as a matter of law that there is no genuine issue of material fact on one of the essential elements of plaintiffs' Lanham Act claim—that defendants' representation regarding their product was false—and grant defendants' motion for summary judgment on the Lanham Act claim. But in light of plaintiffs' submission that they have witnesses who will state, on the basis of personal experience, that defendants' blade is not more durable than plaintiffs' blade, I will allow plaintiffs fourteen days in which to present evidence in opposition to defendants' affidavit on the question of durability. If no such countervailing evidence is produced in that time period, I will enter an order granting defendants' motion for summary judgment with regard to Count II. If plaintiffs make such a submission, defendants will be allowed an opportunity to file a responsive memorandum before I determine whether plaintiff's submission is sufficient to warrant denial of the summary judgment motion.

█ In opposition to the motion for summary judgment, plaintiffs also argue that the alleged misrepresentation discussed in paragraph 11 of the second amended complaint is not the only misrepresentation which supports the Lanham Act claim. Plaintiffs state that, in addition to the claim that the Benton blade is more durable than other doctor blades made of similar quality steel, defendants have misrepresented the configuration of their blade to make it appear that the defendants' blade is of a design similar to that of plaintiffs' blade.

No such claim is clearly set forth in the second amended complaint. Paragraph 12 states that defendants have falsely adver-

tised the "quality and nature" of their doctor blade but provides no specifics. The only allegedly false representation particularized in the second amended complaint is that regarding the durability of the Benton blade in paragraph 11.

Although Federal Rule of Civil Procedure 8 requires a party to plead only a "short and plain statement of the claim," Rule 9 requires that fraud and mistake be pleaded with greater specificity. The Lanham Act claim in the present case is not a pure "fraud" claim and, thus, need not satisfy all of the pleading requirements which have been imposed under Rule 9. But the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in plaintiffs' Lanham Act claim. In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense.

I conclude that Count II's assertion that defendants have misrepresented the "quality and nature" of the Benton blade cannot be read as an allegation that defendants misrepresented the configuration of their blade to make it appear that the blade was shaped similarly to plaintiffs' blade.[4] In light of that conclusion, I have no reason to consider whether defendants' motion for summary judgment on the Lanham Act claim would be successful were such a claim presented in Count II.

### 2. *Motion to sever Count II from Count I and from the patent invalidity counterclaim*

■ Defendants have also moved for severance of the Lanham Act claim in

Count II from the patent infringement claim in Count I and the patent invalidity counterclaim. It may be that this motion will be mooted if plaintiffs either choose to make no further submissions in opposition to the summary judgment motion or provide evidence which is insufficient to establish the existence of a genuine issue of material fact. However, assuming *arguendo* that a Lanham Act claim will be part of this litigation at the time of trial, I will consider defendants' motion to sever.

Federal Rule of Civil Procedure 42(b) allows a court to sever claims or issues for purposes of trial if such a severance would be in furtherance of convenience or would avoid prejudice. Severance is also appropriate when it would be conducive to expedition and economy.

Defendants' motion asserts that severance would avoid prejudice to defendants that likely would result from requiring a single jury to evaluate the complicated patent claims at the same time they must consider the Lanham Act allegations. Defendant does not suggest that such a severance would further the other interests considered under Rule 42(b) such as expedition, economy, and convenience.

Professor Moore, in his federal practice treatise, has noted that:

Only one of Rule 42(b)'s conditions has to be met for the court to order a separate trial.... Nevertheless, a single trial generally tends to lessen the delay, expense and inconvenience to all concerned, and the courts have emphasized that separate trials should *not* be ordered unless such a disposition is clearly necessary. While normally the party moving for a separate trial must show that he will be prejudiced if a separate trial is not granted, the matter rests in the discretion of the trial judge.

**4.** It appears that plaintiffs discussed the alleged misrepresentation of blade configuration in opposition to the prior motion for summary judgment on Count II as well as in opposition to the present motion. Therefore, it may be that defendants became aware of the likelihood of such a claim at some point during the pretrial development of this case. However, when faced with a motion for summary judgment, I must consider the viability of plaintiffs' claims solely by reference to the contents of the pleadings and cannot look beyond the complaint or amendments of the complaint to other claims which may have been informally introduced into the litigation by the parties.

5 *Moore's Federal Practice* ¶ 42.03[1] at 42–36 to –41 (1985) (footnotes omitted).

In the present case, I have no basis for concluding that the interests of economy, convenience or expedition would be served by severing the trial of the patent and Lanham Act claims. In addition, although the union of patent and Lanham Act claims in the complaint will necessarily require the jury to consider two very distinct areas of law, I see no reason to conclude that the jury would not be able properly to evaluate the evidence presented on each legal claim in light of the instructions provided to them. Because defendants have not established a likelihood of prejudice to them from joint trial of these claims, I will deny the motion to sever.

3. *Motion in limine to preclude plaintiffs from claiming the benefit of the filing date of any of the patent applications filed prior to the application which was approved*

█ Count I of the second amended complaint alleges patent infringement; defendants have asserted a counterclaim of patent invalidity. These claims relate to the patent held by plaintiffs for the Daetwyler doctor blade. That patent was issued on January 22, 1980. The last application filed prior to the issuance of the patent was Application Number 653,429 filed on January 29, 1976. That application was a continuation-in-part application of Application Number 514,485 filed on October 15, 1974 which was a continuation-in-part of Application Number 329,070 filed on February 2, 1973.[5]

Defendants assert in their motion *in limine* that the patent should not be deemed to carry the filing dates of the 1974 or 1973 applications but rather that it may carry only the 1976 filing date. Plaintiffs respond that defendants are using this motion to establish the groundwork for a later motion for summary judgment. Plaintiffs contend that if they are not entitled to the filing dates of the earlier applications, the public use of the invention disclosed in the patent between 1974 and 1976 will invalidate the patent. Therefore, plaintiffs argue, if defendants succeed in precluding plaintiffs from claiming the earlier filing dates, defendants will undoubtedly succeed in a future motion for summary judgment directed to the public use issue.[6]

█ Whether a patent gains the benefit of the filing date of an application filed prior to the application which directly preceded the issuance of the patent depends upon whether the requirements of section 120 of Title 35 are met.[7] That section states:

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this

---

5. An applicant may amend his application or file a continuation application to embellish or provide technical improvements of a feature disclosed in the original application. *Stearn v. Superior Distributing Co.,* 674 F.2d 539, 544 (6th Cir.1982). He may also use a continuation-in-part application for that purpose. However, an applicant may not use an amendment or a continuation application to add new matter to an earlier application; a continuation-in-part application is an appropriate instrument for that purpose. *See generally Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423 (Fed.Cir.1984).

6. A patent may not be issued if the invention "was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). Thus, if plaintiffs are only protected by the later application date, any public use prior to January 29, 1975 of the invention disclosed in the patent would mean that the patent was improperly issued and thus, invalid.

However, if plaintiffs are protected by the 1974 or 1973 application dates, public use of their doctor blade between 1974 and 1976 would not affect the validity of the patent.

7. To the extent that a later application for a patent adds new matter which was not inherent in the original application, that new matter is not entitled to the benefit of the earlier filing date. However, the earlier filing date does apply to the material in the later application which was disclosed in the earlier application. *E.g., Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1439 (Fed.Cir.1984); *Stearn v. Superior Distributing Co.,* 674 F.2d 539 (6th Cir. 1982); *Application of Klesper,* 397 F.2d 882 (C.C. P.A.1968); *Chisolm-Ryder Co. v. Lewis Manufacturing Co.,* 398 F.Supp. 1287 (W.D.Pa.1975), *aff'd* 547 F.2d 1159 (3d Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977).

title in an application previously filed in the United States, ..., which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

■ In the present motion, defendants do not deny (1) that in 1973 and 1974 applications were filed by the inventor named in the 1976 applications, (2) that the continuation-in-part applications were filed prior to the patenting, abandonment, or termination of proceedings on the earlier applications, and (3) that the later applications contained specific references to the earlier applications. The sole issue raised by the present motion is whether the earlier applications disclosed the invention in the manner provided by section 112. The pertinent portion of section 112 states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

In other words, the question raised by the present motion is whether the description of the invention presented in the earlier applications was sufficient to allow a person skilled in the art to make and use the invention which was finally patented.

Defendants assert that the later application contained information not found in the earlier applications and, thus, the earlier applications could not be said to have contained a sufficient description of the inven-

tion which was eventually patented. In particular, defendants point to the language in the 1976 application which states that the patented doctor blade is selected to be essentially identical to the conventional doctor blade bevel at optimum tonal quality size.[8] Defendants assert that this language was not in the prior applications. Consequently, defendants contend, the earlier patent applications cannot be claimed to have contained a description of the invention sufficient to describe the ultimately patented invention under the terms of section 112.

Plaintiffs respond by citing to language in the earlier applications which they believe describes the same concepts as the language defendants cite in the later application. Plaintiffs argue that it is not necessary that each consecutive application contain exactly the same language for the later application to gain the benefit of the earlier application date.

Upon consideration of the language in the 1976 application as well as the language of the 1974 and 1973 applications, I conclude that I cannot, at this time, state as a matter of law that plaintiffs are not entitled to the benefit of the filing dates of the earlier applications. The question whether the later application contained new matter not found in the earlier applications, is a question of fact. *Hogg v. Emerson*, 52 U.S. (11 How.) 587, 13 L.Ed. 824 (1850); *Stearn v. Superior Distributing Co.*, 674 F.2d 539, 543, (6th Cir.1982) (a district court finding of new matter is reviewed under the "clearly erroneous" standard). Therefore, to determine at this stage of the litigation that plaintiffs are precluded from claiming the benefit of the earlier filing date, I must conclude that there are no genuine issues of fact as to the contents of each application and as to what those contents would mean to one skilled in the art. Although the language of each application is before me at this time, it is impossible for me to conclude as a matter of law that

---

**8.** For a further discussion of the meaning of the language in plaintiffs' patent which states that the patented blade is chosen to be of a bevel width which produces optimal tonal quality printing, see *Max Daetwyler Inc. v. Input Graphics, Inc.*, 583 F.Supp. 446 (E.D.Pa.1984).

the later application necessarily contains new matter.

■ The fact that the later application does not describe the invention in precisely the same language as it was described in the earlier application does not mandate the conclusion that the later application contains new matter. *E.g., Application of Edwards,* 568 F.2d 1349, 1352 (C.C.P.A. 1978); *In re Lukach,* 442 F.2d 967 (C.C.P. A.1971). The question to be answered when deciding whether a later application contains new matter not disclosed in the earlier applications is "whether a person skilled in the relevant art, reading a parent application [the earlier application] would have found the [continuation-in-part] disclosures in question to be inherent in the disclosures of the parent and would not have to undertake any independent experimentation in order to do so." *Stearn v. Superior Distributing Co.,* 674 F.2d at 544. *See Application of Herschler,* 591 F.2d 693 (C.C.P.A.1979); *Application of Driscoll,* 562 F.2d 1245 (C.C.P.A.1977); *Application of Hoffman,* 556 F.2d 539 (C.C.P. A.1977); *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.,* 547 F.2d 1300, 1305 (7th Cir.1976), *cert. denied,* 431 U.S. 929, 97 S.Ct. 2631, 53 L.Ed.2d 243 (1977); *Railroad Dynamics, Inc. v. A. Stucki Co.,* 579 F.Supp. 353 (E.D.Pa.1983), *aff'd,* 727 F.2d 1506 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984).

■ I have reviewed the language of the earlier applications to determine whether anything contained therein could relay sufficient information to one skilled in the art for that person to conclude that the statements in the later application regarding the selection of a blade with a bevel which produces optimal tonal quality printing were inherent in the earlier applications. There is some language in those earlier applications, including the language cited by plaintiffs in opposition to the current motion, which suggests that the invention should produce optimum tonal quality printing and which discusses the blade bevel widths which are described in the later application as producing optimal tonal quality. Without evidence as to what these discussions would mean to one skilled in

the art, I cannot determine as a matter of law that these earlier applications would not allow one skilled in the art to make a doctor blade which conforms to the specifications of the later patent application.

Defendants contend, however, that it is not necessary for me to make such a factual determination to resolve the motion *in limine* in their favor. They assert that the fact that the 1974 and 1976 applications were labelled "continuation-in-part" applications, creates an irrebutable presumption that such applications contained new matter not disclosed in the earlier applications. In support of this assertion, defendants cite to the decision of Judge Dowd of the Northern District of Ohio in *Foseco International Ltd. v. Fireline, Inc.,* 607 F.Supp. 1537 (1984). In that case, the court concluded that the decision of the Court of Appeals for the Federal Circuit in *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423 (1984), had held that the filing of a continuation-in-part application created an irrebuttable presumption that the later application contained new subject matter not inherent in the earlier application. Therefore, Judge Dowd found that the patent holder was estopped from claiming the benefit of the earlier application dates by his actions in labelling the later application a continuation-in-part application rather than labelling the application a continuation application. However, that conclusion has since been revised by Judge Dowd who, in ruling on a motion for a new trial in the same case, held that the decision of the Court of Appeals for the Federal Circuit in *Pennwalt Corp. v. Akzona, Inc.,* 740 F.2d 1573 (1984), substantially restricted the irrebuttable presumption discussed in *Litton.*

In *Litton,* the Court of Appeals for the Federal Circuit, speaking through Senior Circuit Judge Nichols, stated that the patent holder had, by "recasting its Rule 60 continuation application as a [continuation-in-part], implied that it did add new matter." *Litton, supra,* 728 F.2d at 1438. However, that conclusion arose out of the relatively unique history of the prosecution of the application before the Patent and

Trademark Office ("PTO"). In that case, the PTO rejected an application and then rejected an attempt to amend that application. The amendment was rejected on the ground that it was "drawn on new matter." 728 F.2d at 1435. The applicant then filed an application containing the proposed amendments but labelled it a continuation-in-part application. Under those circumstances, the court determined, the applicant's choice of the label "continuation-in-part" after rejection of the same application as an amendment constituted an acquiescence in the PTO conclusion that the amendment contained new matter.

This narrow interpretation of the holding in *Litton* is supported by the decision of the Court of Appeals for the Federal Circuit six months after the *Litton* decision in *Pennwalt Corp. v. Akzona, Inc.*, 740 F.2d 1573 (1984). The *Pennwalt* court concluded that Litton had held:

> the issuance of a patent from a [continuation-in-part] application, filed in response to a PTO "new matter rejection," estops the patentee from arguing that the PTO's rejection was erroneous.

740 F.2d at 1578 (footnote omitted). Later in that opinion, the court definitively rejected the interpretation of *Litton* proposed by the first opinion in *Foseco*.

> The filing of a [continuation-in-part] application to overcome a PTO rejection does not, however, give rise to an irrebuttable presumption of acquiescence in the rejection.

*Id.*

Consequently, it appears that the Court of Appeals for the Federal Circuit has not imposed an irrebuttable presumption that the filing of a continuation-in-part application precludes the patent holder from claiming the benefit of the earlier applications. A similar conclusion has been reached by the Court of Appeals for the Sixth Circuit. *Stearn v. Superior Distributing Co.*, 674 F.2d 539, 544 (6th Cir.1982) ("The filing of a CIP is not an admission that new matter is contained therein.") In

light of the fact that no other court has applied such a presumption, I conclude that it is inappropriate to establish the rule proposed by defendants in this case.

Because I have been directed to no aspects of the procedural history of the prosecution of the application for the plaintiffs' patent that are contended to estop plaintiffs from claiming the benefit of the earlier application date under *Litton,* I conclude that the current record affords no basis for determining as a matter of law that plaintiffs have forfeitted their claim to those filing dates. In light of that conclusion and the determination made earlier that I cannot, as a matter of law at this time, conclude that the language cited by defendants is new matter, I must deny defendants' motion *in limine.*

When the motions which are the subject of this Opinion were filed, it was stipulated by the parties that the time for filing pretrial memorandas and for preparing the joint pretrial memorandum would be delayed until after the motions were resolved. It was therefore ordered that plaintiffs' pretrial memorandum would be filed fourteen (14) days after the date of an order resolving these motions with defendants' pretrial memoranda to be filed fourteen (14) days after the filing of plaintiffs' memorandum. Because this Opinion does not completely resolve the motion for summary judgment filed by defendants, the time for filing of plaintiffs' pretrial memorandum shall not begin to run until an order is issued which grants or denies that motion.