**FEDERAL EXPRESS CORPORATION,
Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**No. 09–2269 Ma/P.**

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 22, 2010.

---

Colleen D. Hitch, Connie Lewis Lensing, R. Jeffery Kelsey, Federal Express Corporation, Memphis, TN, for Plaintiff.

David C. Wade, Martin Tate Morrow & Marston, Memphis, TN, Bruce William Baber, Elizabeth Bienko Brown, Elizabeth Moore Fox, Paul J. Murphy, Stephen M.

Schaetzel, King & Spalding LLP, Atlanta, GA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

TU M. PHAM, United States Magistrate Judge.

Before the court is defendant United Parcel Service, Inc.'s ("UPS") Motion to Dismiss Amended Complaint. (D.E. 29.) Plaintiff Federal Express Corporation ("FedEx") filed a response in opposition, and UPS filed a reply. For the reasons below, UPS's motion is GRANTED in part and DENIED in part.[1]

## I. BACKGROUND

FedEx is in the business of providing door-to-door delivery of documents, packages, and freight, and providing related support services throughout the United States and the world by means of air and ground transportation systems. (Am. Compl. ¶ 6.) UPS provides similar delivery and support services, and is a direct competitor of FedEx. (Id. ¶ 7.) On or about March 15, 2009, UPS began broadcasting a commercial on national television and on its website featuring an actor drawing on a "whiteboard." While drawing on the whiteboard, the actor says:

Alright. If you're looking for a shipping company who really understands today's economy, you'd want one that's helped customers through twenty recessions, has over 400,000 employees worldwide, over a hundred years' experience, and

was just ranked the most reliable. Well that would be UPS. Because this economy is showing us something. It's time to rely on the experience of UPS. Looks like somebody has a lot of empty boxes. [VOICE OVER] Now more than ever, see what Brown can do for you.

(Id. ¶ 8, Ex. A.) As the actor says the words "just ranked the most reliable," a legend appears at the bottom of the screen for approximately one second that reads, "According to Morgan Stanley Parcel Returns Survey, November, 2008" (the "Claim"). (Id. ¶ 9.) The survey cited in the UPS commercial was the fifteenth semiannual Parcel Returns Survey conducted by Morgan Stanley Research ("November 2008 survey"), which appeared in a Morgan Stanley Research report dated November 7, 2008.[2] (Id. ¶ 10, Ex. B.) The report analyzed the freight transportation industry and evaluated stocks for companies within the industry, such as FedEx and UPS, for investment purposes. (Id. Ex. B.) Under the heading "Service Reliability," the November 2008 survey "ranked" UPS Air first and UPS Ground second. Under that same category, FedEx Air was ranked third and FedEx Ground was ranked fourth.[3] (Id.)

On March 31, 2009, FedEx sent a letter to UPS demanding that it discontinue the commercial on the grounds that the November 2008 survey did not provide a reasonable basis for UPS to claim that it was "just ranked the most reliable" and that the survey was not sufficiently reliable for UPS to make the Claim with reasonable

---

1. The parties consented to have the magistrate judge preside over and dispose of this motion pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See Barron v. PGA Tour, Inc.*, 670 F.Supp.2d 674, 677 n. 2 (W.D.Tenn.2009).

2. The survey was conducted in conjunction with *Parcel Magazine*. (*Id.* Ex. B.)

3. DHL, which is another company that provides delivery services, and the United States Postal Service were the only other delivery service providers included in the "Service Reliability" ranking. (*See* Ex. B.)

certainty. (*Id.* ¶ 11, Ex. C.) On April 13, 2009, UPS sent a letter to FedEx stating that it would not discontinue the commercial.[4] (*Id.* ¶ 12.)

On April 26, 2009, while UPS was continuing to air the commercial, Morgan Stanley Research published another freight transportation industry report which contained the results of its sixteenth semi-annual Parcel Returns Survey ("April 2009 survey"). (*Id.* ¶ 13.) Under the category of "Service Reliability," the April 2009 survey ranked FedEx Air first, UPS Ground second, UPS Air third, and FedEx Ground fourth. (*Id.* ¶¶ 13–14, Ex. E.) On April 27, 2009, FedEx sent a letter to UPS informing it of the April 2009 survey and demanding that UPS immediately cease any further broadcasts of the commercial. (*Id.* ¶ 15, Ex. F.) UPS did not respond to the letter and continued to air the commercial on national television and on its website. (*Id.*)

On May 1, 2009, FedEx served UPS with a Verified Complaint for Temporary Restraining Order, Permanent Injunction and Money Damages. The complaint alleged that UPS, by airing the commercial claiming it was "just ranked the most reliable," engaged in false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Tennessee Consumer Protection Act, T.C.A. §§ 47–18–104(a), (b)(5), (b)(7), and (b)(21). On the afternoon of May 1, after UPS was served with the complaint, UPS stopped airing the commercial.[5] (*Id.* ¶ 16.) On May 4, 2009, the district judge conducted a hearing on FedEx's request for a temporary restraining order. After the hearing, the district judge denied the motion as moot

because UPS had ceased airing the commercial as of May 1.

On September 22, 2009, FedEx filed its Amended Complaint, clarifying the federal claims and withdrawing the state law claims. FedEx alleges that the Claim in the commercial is an " 'establishment claim' because it expressly and/or implicitly asserts that the truth of the Claim is established by a reliable, properly performed, and properly analyzed, scientifically based survey." (*Id.* ¶ 20.) FedEx contends that UPS violated the Lanham Act (before and after April 26, 2009) because the Claim was based on the November 2008 survey, which was not sufficiently reliable in that (1) the margin of error was such that a claim of superior reliability could not be supported; (2) the sample size was insufficient; (3) the participants in the survey were not sufficiently screened or representative of the relevant parcel shipping market; (4) the survey questions and responses were too narrow to support the overly broad superior reliability claim; and (5) the structure and execution of the survey did not meet the minimum levels required by survey methodology to provide the necessary substantiation. (*Id.* ¶¶ 26, 35(c).)

FedEx further contends that prior to April 26, the Claim was literally false in that (1) UPS was not *just* ranked the most reliable, because several months had passed between the time the survey was conducted and when the commercial aired; and (2) UPS was not *ranked* the most reliable, because the survey asked participants to *rate* each individual delivery service provider on its service reliability on a

---

4. FedEx claims that UPS, in addition to citing the November 2008 survey in the commercial, "also sent letters to UPS and FedEx customers that made the claim that UPS was 'just ranked the most reliable' according to the November 2008 Survey." (*Id.* ¶ 18, Ex. G.)

5. FedEx alleges that "[u]pon information and belief, UPS ran the Advertisement over 500 times on national television from March 15, 2009 until the afternoon of May 1, 2009." (*Id.* ¶ 17.)

scale of one to ten—not rank them in order of reliability. (*Id.* ¶¶ 25, 35(c).) FedEx also asserts that as of April 26, the commercial was literally false and false by necessary implication because once the April 2009 survey was released ranking FedEx Air first for "Service Reliability," UPS could no longer claim that it was "just ranked the most reliable." (*Id.* ¶¶ 21–22, 35(a)-(b).) Alternatively, FedEx alleges that even if the Claim was not literally false, it actually misled and deceived consumers into believing that UPS was ranked higher than FedEx in service and reliability and had statistically better on time performance or reliability than FedEx, when in fact the November 2008 survey did not support such a claim. (*Id.* ¶¶ 28, 35(d).) FedEx also contends that the Claim misled and deceived consumers into believing that UPS was ranked the most reliable after April 26 based on the most recent survey results when, in fact, it was not. (*Id.*) FedEx seeks damages, injunctive relief, and attorney's fees for the alleged Lanham Act violations. (*Id.* § VI.)

## II. ANALYSIS

### A. Rule 12(b)(6) Standard

UPS seeks to dismiss FedEx's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)) ("civil complaint only survives a

motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"). Although the court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, the court "need not accept as true legal conclusions or unwarranted factual inferences ... and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902–03 (6th Cir.2009) (citations and quotation marks omitted).

### B. Lanham Act Claims

The Lanham Act provides in relevant part as follows:

(a) (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

. . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §§ 1125(a)(1), (a)(1)(B). This section of the Lanham Act creates a cause of action for false or misleading advertising. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery*, 185 F.3d 606, 613 (6th Cir.1999).

 A plaintiff bringing a cause of action for false or misleading advertising under the Lanham Act must establish "(1)

the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff." *Id.* (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 922–23 (3d Cir.1990); *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 964 (D.C.Cir.1990)).

■ "When a plaintiff seeks an award of monetary damages for false or misleading advertisement under the Lanham Act, he may show either that the defendant's advertisement is literally false or that it is true yet misleading or confusing." *Id.* at 614 (citing *Castrol, Inc. v. Pennzoil Co.,* 987 F.2d 939, 943 (3d Cir.1993)); *see also Osmose, Inc. v. Viance, LLC,* No. 09–15563, 2010 WL 2977988, at *6 (11th Cir. July 30, 2010); *Doctor's Assocs. v. QIP Holder LLC,* No. 3:06–cv–1710, 2010 WL 669870, at *15 (D.Conn. Feb. 19, 2010). "Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers" because "[a]ctual deception is presumed." *Am. Council of Certified Podiatric Physicians & Surgeons,* 185 F.3d at 614. "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.,* 290 F.3d 578, 586–87 (3d Cir.2002) (quoting *Clorox Co. v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 35 (1st Cir.2000)). "Regardless, only an *unambiguous* message can be literally false." *Id.* "The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported." *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1181 (8th Cir.1998). "Where statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product)." *Am. Council of Certified Podiatric Physicians & Surgeons,* 185 F.3d at 614. Whether or not a statement is ambiguous is a question of law, while determining whether facts exist so as to make a statement true is a question of fact. *Id.* at 615 n. 2.

■ In the case where a plaintiff seeks monetary damages, a plaintiff "relying upon statements that are literally true yet misleading 'cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react.'" *Id.* (quoting *Sandoz Pharm. Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 229 (3d Cir.1990)). Evidence of consumers' actual reaction usually includes consumer surveys or other market research. *Id.* at 616. Where a plaintiff seeks injunctive relief, that form of relief "'may be obtained by showing only that the defendant's representations about its products have a tendency to deceive consumers while recovery of damages requires proof of actual consumer deception.'" *Id.* at 618 (quoting *Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F.Supp. 1549, 1551 (E.D.Pa.1985)). "Although plaintiff need not present consumer surveys or testimony demonstrating actual deception, it must present evidence of some sort demonstrating that consumers were misled." *Id.*

### 1. *Literal Falsity Based on Unreliability of Survey*

■ "A plaintiff seeking to prove that an advertising claim is literally false 'bears a different burden depending on whether [or not] the advertisement purports to be based on test results.'" *Doctor's Assocs.*, 2010 WL 669870, at *15; *see also Johnson & Johnson Vision Care, Inc. v. 1–800 CONTACTS, Inc.*, 299 F.3d 1242, 1248 (11th Cir.2002) (citing *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare L.P.*, 131 F.3d 430, 435 (4th Cir.1997); *Rhone–Poulenc Rorer Pharms. Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 514–15 (8th Cir.1996); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir.1992)). "If an advertisement cites such testing, the advertisement is labeled as an 'establishment' claim." *1–800–CONTACTS*, 299 F.3d at 1248 (citing *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1090 (7th Cir.1994)). "Hence, where a defendant's advertisement contends that 'clinical tests' prove the superiority of its product (an 'establishment claim'), the plaintiff need only prove that 'the tests referred to ... were not sufficiently reliable to permit one to conclude with reasonable certainty that they established the proposition for which they were cited.'" *Doctor's Assocs.*, 2010 WL 669870, at *15 (quoting *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F.Supp.2d 339, 345 (S.D.N.Y. 2008); *Quaker State Corp.*, 977 F.2d at 62–63). "On the other hand, where a superiority claim does not purport to rest on test results, the plaintiff may prove falsity 'only by adducing evidence that affirmatively show[s] [defendant's] claim ... to be false.'" *Doctor's Assocs.*, 2010 WL 669870, at *15 (quoting *Procter & Gamble Co.*, 574 F.Supp.2d at 345; *Quaker State Corp.*, 977 F.2d at 62–63).

■ In its Motion to Dismiss, UPS argues that the Claim is not an establishment claim because it "simply reported that UPS had been ranked most reliable in the November 2008 Morgan Stanley Parcel Returns Survey, not that the Morgan Stanley survey 'proved' that UPS is the most reliable." (Def.'s Mot. to Dismiss at 7.) UPS asserts that it "did not make a comparative or other advertising 'claim' at all," but instead merely "made a truthful statement that reported the results of the publicly-available November 2008 [survey]." (*Id.* at 9.) According to UPS, "[w]hile the [Claim] attributes that ranking to the Morgan Stanley survey, it does not rely on that survey to make a superiority claim. It merely reports the results of the November 2008 Morgan Stanley Parcel Returns Survey, as they appear unambiguously in the survey report." (*Id.*) UPS goes on to argue that "[f]actual reports in advertising of the results of independent surveys or studies are commonplace" and that the "Lanham Act does not preclude a competitor from accurately informing the public of independent research results regarding its services." (*Id.* at 10.) UPS contends that "the public is routinely exposed to statements in advertising such as: 'Service Provider X was ranked by its customers as the # 1 provider according to J.D. Power and Associates' or 'Product Y was ranked best overall vehicle by Consumer Reports,'" and that if the court were to allow this lawsuit to proceed against UPS, "every time a community newspaper publishes a poll identifying the best restaurant, the best bar, or the best slice of pizza, the winning establishment would have to first verify the newspaper's methodology before accurately reporting the results." (*Id.*)

The few courts that have addressed false advertising claims involving "reports" of studies or surveys have treated such "reports" as establishment claims. In *1–800 CONTACTS*, 299 F.3d at 1249, the defendant mailed a letter to its customers recommending CIBA Vision's Focus Dailies

contact lenses over the plaintiff's ACU-VUES lenses. The letter claimed that "Focus Dailies are preferred 5 to 1 over ACUVUES" and cited a study published by a trade journal named Contact Lens Spectrum, which identified a five to one consumer preference for Focus Dailies over ACUVUES. *Id.* at 1246, 1248. The Court of Appeals analyzed the letter's claim as an establishment claim and reversed the district court's decision granting a preliminary injunction because the plaintiff could not "satisfy the burden of proof once the proposition is appropriately analyzed as an establishment claim." [6] In *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 348 F.Supp.2d 165 (S.D.N.Y.2004), the defendant's promotional materials contained the claim "75% of lens wearers preferred $O_2OPTIX$ to ACU-VUE ADVANCE" according to "a double-masked, randomized clinical study where all patients wore both lenses." *Id.* at 172. Because the defendant's materials cited the clinical study as a basis for the consumer preference claim, the court treated the claim as an establishment claim. *Id.* at 180. In *Smithkline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson–Merck Consumer Pharm. Co.*, 906

F.Supp. 178 (S.D.N.Y.1995), the defendant in both print and television advertisements claimed that "[w]hen doctors and pharmacists were asked which they would recommend more often, 8 out of 10 chose PEP-CID AC Acid Controller over TAGAMET HB." *Id.* at 183. The defendant based this claim on a June 1995 study conducted by Bruno & Ridgeway Research Associates. *Id.* The court analyzed the claim as an establishment claim and found that the study was biased.[7] *Id.* at 184. UPS has not cited, and the court in conducting its own research could not find, any case in which a court has declined to treat an advertisement's "report" of a test or survey as an establishment claim.[8]

UPS's "report" that it was ranked the most reliable according to the November 2008 survey is no different from a commercial's claim that, according to a study, consumers preferred a certain brand of contact lenses five to one over another brand or that eight out of ten doctors recommended one brand of medication over another brand. In each of these cases, the defendants "reported" the results of a survey or test which showed that the defendant's product was in some way superior to the competition (e. g. more reliable de-

---

**6.** The court noted that "[a] movant may undermine the validity of the test results cited by the defendant 'by demonstrating that the tests were not sufficiently reliable to permit a conclusion that the product is superior.' ... [Plaintiff], however, did not contest the reliability of the CLS study." *Id.* at 1249 n. 6 (internal citation omitted.)

**7.** In an attempt to distinguish these cases, UPS argues in its reply brief that these cases "involved situations in which the defendant both conducted or sponsored the test and 'interpreted' the test results." (Def.'s Reply Br. at 6.) However, the study at issue in *1–800–CONTACTS* apparently was an independent study conducted by a trade journal. In any event, the court does not see why a distinction should be made between studies commissioned by the defendant and those

performed by independent, third-party organizations.

**8.** On page 10 of its motion, UPS cites *Suzuki Motor Corp. v. Consumers Union of U.S.*, 330 F.3d 1110 (9th Cir.2003) for the proposition that "[t]he public is attuned to such statements and accords them appropriate weight as a part of the advertising at issue." However, *Suzuki* involved a lawsuit brought by Suzuki directly against the publisher of *Consumer Reports*, which had published a negative report about one of Suzuki's vehicles. *Id.* at 1129–30. Thus, the issue before that court was whether a reasonable jury could find, by clear and convincing evidence, that the plaintiff had shown the defendant published disparaging statements with actual malice. *Id.* at 1132.

livery service, better lenses, faster stomach acid relief). A defendant cannot attempt to attract consumers by using a favorable (but unreliable) test in an advertisement, and then try to avoid Lanham Act liability by asserting that it was merely "reporting" the results of the test. As one court has observed,

> While we have held that non-profit organizations must be free to publish on any topic, even those that redound to their financial benefit, without fear of Lanham Act liability, the same does not apply to subsequent (or, occasionally, prior) promotional uses of that speech. The situation is similar to that of a restaurant or movie review or a *Consumer Reports* product report. While the restaurant review or product report itself constitutes exactly the type of "consumer or editorial comment" that "raise[s] free speech concerns" and which Congress explicitly intended to exclude from Section 43(a)'s scope, ... a restaurant clearly engages in commercial speech when it posts the New York Times review in its window, and General Motors engages in commercial speech when it announces in a television commercial that its car was ranked first by *Consumer Reports*. The *Consumer Reports* article, of course, does not somehow become commercial speech; rather, G.M.'s *use* of the article is commercial speech. Consequently, G.M. may be sued under the Lanham Act, and *Consumer Reports'* testing methodology may become subject to judicial scrutiny to determine whether G.M. "use[d] in commerce" a "false or misleading representation of fact."

*Gordon & Breach Science Publishers v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1544–45 (S.D.N.Y.1994) (internal footnote omitted.) [9]

■ FedEx alleges in its Amended Complaint that the survey results were not sufficiently reliable for UPS to make the Claim with reasonable certainty because, among other things, the margin of error was too high, the sample size was insufficient, the participants were not sufficiently screened, the questions and responses were too narrow, and the structure, execution, and methodology were flawed. Based on these allegations, FedEx has set forth enough facts to state a claim for literal falsity based on the unreliability of the survey to survive UPS's Motion to Dismiss.

### 2. Literal Falsity Prior to April 26 Based on the Words "Just Ranked"

FedEx alleges that even if the November 2008 survey was sufficiently reliable,

**9.** In *Gordon & Breach Science Publishers*, commercial publishers of scientific journals sued nonprofit physics societies for false advertising under the Lanham Act when the nonprofits published comparative surveys of scientific journals, which surveys rated nonprofit journals as better bargains as compared to the commercial journals. *Id.* at 1523. The court distinguished between "mere publication" of the surveys, which is not considered "commercial advertising or promotion" under the Lanham Act, and activities that are explicitly promotional in nature, which fall within the Lanham Act's reach. In denying in part the nonprofits' motion to dismiss for failure to state a claim, the court found that the nonprofits could be liable for false advertising based on their distribution of the favorable survey results to librarians, as "[t]hese are allegations of activities explicitly promotional in nature; distribution of survey results favoring defendants' products to an audience that represents the core consumers of those products." *Id.* at 1544. The court explained that this "secondary use" of the survey results could properly be described as "commercial speech that a competitor employs for the express purpose of influencing consumers to buy [its] goods or services," or as "speech proposing a commercial transaction," both of which fall within the Lanham Act's prohibition on false or misleading advertising. *Id.* (citations omitted).

the Claim made by UPS prior to April 26, 2009 was literally false because, under an establishment claim theory, the survey did not actually establish that (1) UPS was *just* ranked the most reliable, because several months had passed between the time the survey was conducted and when the commercial aired; and (2) UPS was not *ranked* the most reliable, because the survey asked participants to rate each individual delivery service provider on its service reliability, not rank them in order of reliability. A plaintiff can carry its burden of proving literal falsity of an establishment claim "[i]f the plaintiff can show that the tests, even if reliable, do not establish the proposition asserted by the defendant." *Quaker State Corp.*, 977 F.2d at 63.

■ Focusing on the time period that the commercial aired prior to April 26, and accepting the allegations in the Amended Complaint as true, the court concludes that the complaint fails to state a claim for literal falsity under an establishment claim theory of recovery based on the words "just ranked." Regarding the commercial's use of the word "just," FedEx fails to state a cause of action because that part of the Claim is literally true, or at most, it is ambiguous. The commercial specifically identified the survey by its date, so the November 2008 date was actually part of the overall Claim being made by UPS, thus making the claim that UPS was "just" ranked literally true. Even if, as FedEx alleges, the legend that identified the November 2008 survey appeared on the screen for only one second and was too small to read, the claim that UPS was "just" ranked is ambiguous. The word "just" means "but a very short time ago: very recently." Webster's Third New International Dictionary, Unabridged, http://unabridged.merriam-webster.com (2002). Hence, the claim that UPS was "just" ranked could be construed to mean that UPS was ranked most reliable within the past week, past month, past year, or since

the last time Morgan Stanley Research conducted its survey. Moreover, the November 2008 survey never purported to establish the proposition that it had "just" ranked the delivery service providers, and therefore FedEx cannot state a claim, under an establishment claim theory, that the *survey* "did not establish the proposition for which it was cited." *Quaker State Corp.*, 977 F.2d at 63.

FedEx also fails to state a claim for literal falsity under an establishment claim theory based on the word "rank," because even if the survey questionnaires asked participants to rate the providers based on service reliability, the November 2008 survey unequivocally purported to rank the providers, thus making the claim literally true. The November 2008 survey stated that "UPS Ground surpasses FDX Air in service rankings" and displayed a chart that listed the "rank" of UPS Air and UPS Ground as "1" and "2" under the "Service Reliability" category. (Am. Compl. Ex. B at 7, 12.) While FedEx may challenge the methodology employed by Morgan Stanley Research in reaching the conclusion that UPS was ranked the "most reliable," FedEx cannot state a cause of action for literal falsity by claiming that the survey did not rank the providers—because the survey plainly did.

FedEx argues that the commercial's legend stating, "According to Morgan Stanley Parcel Returns Survey, November, 2008" did not refer to the November 7, 2008 Morgan Stanley Research report or the survey results as interpreted by Morgan Stanley Research in the report (which clearly ranked UPS and FedEx), but rather referred to the actual survey responses (which FedEx contends asked participants only to rate the companies on service reliability). The court does not see how the reference to the "Parcel Returns Survey" could be reasonably understood by anyone

to mean the survey participants' actual responses, and not Morgan Stanley Research's summary and interpretation of the survey results. In any event, this alleged discrepancy would only result in making the "rank" claim ambiguous. Therefore, UPS's Motion to Dismiss is granted as to this claim.

### 3. Literal Falsity and False by Necessary Implication as of April 26

Next, FedEx alleges that the Claim was literally false as of April 26, 2009 because, after the April 2009 survey results were released, UPS could no longer claim that it was "just" ranked the most reliable delivery service provider. FedEx also alleges that the Claim was false by necessary implication as of April 26, because the overall context of the commercial gave the impression that the Claim was based on the most recent Morgan Stanley Research survey results, which it was not.

A "false-by-necessary-implication claim fails if the statement can reasonably be understood to convey different messages." *Outdoor Techs., Inc. v. Vinyl Visions, L.L.C.,* No. 1:06–cv–044, 2006 WL 2849782, at *7 (S.D.Ohio Sept. 29, 2006) (citing *Scotts Co. v. United Indus. Corp.,* 315 F.3d 264, 274–75 (4th Cir.2002); *Novartis Consumer Health, Inc.,* 290 F.3d at 586–87). The court explained above that FedEx has failed to state a claim based on the commercial's use of the word "just," because that claim is literally true, or at most, it is ambiguous. That same reasoning applies to the Claim even after the release of the April 2009 survey. The commercial continued to cite the November 2008 survey, which remained part of the overall Claim. In addition, the claim that UPS was "just" ranked, even after April 26, could reason-

ably be understood to convey different messages, including, for example, that UPS was ranked most reliable most recently, that UPS was ranked most reliable sometime in the recent past, or that UPS was ranked most reliable in November of 2008. While the commercial's use of the word "just" was possibly misleading after the release of the April 2009 survey, it was ambiguous and reasonably conveyed different messages. Therefore, UPS's Motion to Dismiss is granted as to this claim.

### 4. Literally True but Misleading

■ Alternatively, FedEx alleges that, even if the Claim was not literally false, it actually misled and deceived consumers into believing that UPS was ranked higher than FedEx in service and reliability and had statistically better on time performance or reliability than FedEx. FedEx also argues that the commercial misled and deceived consumers into believing that UPS was ranked the most reliable after April 26 based on the most recent survey results when, in fact, it was not.[10]

■ In its Motion to Dismiss, UPS argues that FedEx "merely recites elements of a cause of action" without citing any evidence of actual deception. FedEx, however, is not required to set forth evidence of actual consumer confusion at the pleading stage. *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 37 n. 11 (1st Cir.2000) (finding that a plaintiff need not "identify the particular consumer survey that will be used to support its allegations to survive a motion to dismiss"); *Klein–Becker USA, LLC v. Home Shopping Network, Inc.,* No. 2:05–CV–00200, 2005 WL 2265007, at *4 (D.Utah Aug. 31, 2005) (quoting *Clorox* )

---

**10.** UPS argues that FedEx cannot make this claim, because "[i]n order for FedEx to make such a claim, it must concede that the statement is true—which FedEx does not do."

(Def.'s Mot. to Dismiss Am. Compl. at 15.) The court disagrees, as FedEx may plead in the alternative.

("Generally, plaintiffs use consumer surveys to prove that advertisements are misleading in Lanham Act claims, although a Lanham Act plaintiff does not necessarily have to 'identify the particular consumer survey that will be used to support its allegations to survive a motion to dismiss.'"). In this case, FedEx has sufficiently alleged actual consumer confusion and deception caused by the commercial. That allegation, together with the other allegations contained in the Amended Complaint and discussed above, sufficiently state a claim for misleading advertising under the Lanham Act. Therefore, UPS's Motion to Dismiss the misleading advertising claim is denied.

### III. CONCLUSION

For the reasons above, UPS's Motion to Dismiss Amended Complaint is GRANTED in part and DENIED in part.

IT IS SO ORDERED.